UNITED STATES of America, Appellee,

v.

Alexander STEWART, Appellant.

No. 93–2996.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 12, 1993.

Decided April 5, 1994.

Michael C. Angel, Little Rock, AR, argued, for appellant.

John E. Bush, Little Rock, AR, argued, for appellee.

Before BOWMAN, Circuit Judge, JOHN R. GIBSON,* Senior Circuit Judge, and HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

On March 1, 1993, at the federal courthouse in Little Rock, Arkansas, a magistrate judge presided over an evidentiary hearing in a civil action filed by Alexander Stewart, then an Arkansas inmate. At the conclusion of the hearing, Stewart punched the deputy director of the Arkansas Department of Corrections. The deputy director suffered a severely broken nose, which required reconstructive surgery. Stewart was then indicted for and convicted by a jury of assault. *See* 18 U.S.C. § 113(f). The district court[1] sentenced him to 70 months of imprisonment. Stewart appeals his conviction and sentence. We affirm.

---

* The HONORABLE JOHN R. GIBSON was an active judge at the time this case was argued and became a Senior Circuit Judge on January 1, 1994, before this opinion was filed.

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

## I.

The government charged Stewart with retaliation against a witness, *see* 18 U.S.C. § 1513, and assault, *see* 18 U.S.C. § 113(f). (R. at 1–2.) Stewart was again disruptive at his arraignment.[2] Prior to trial, Stewart filed a *pro se* motion to dismiss his court-appointed counsel and, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), sought leave to represent himself at trial. (Appellant's App. at A9.) The district court granted the motion but appointed standby counsel. (*Id.* at A12.)

On the morning of the one-day trial before Judge Woods, Stewart was again disruptive and dilatory. He interrupted the district court's attempts to ensure that his waiver of counsel was fully informed.[3] He was argumentative when the district court warned him about his disruptive conduct.[4] He made

---

**2.** For example:

    THE COURT: All right. We have a number of cases for plea and arraignment this morning. The first case I'll call will be the case of United States of America versus Alexander Stewart, LR–CR–93–54.

    THE DEFENDANT: Why me always first? What is it with you, man? I really don't want to hear a goddam [sic] thing you've got to say.

    THE COURT: Mr. Stewart, if you'll come forward—

    THE DEFENDANT: Man, I don't want to hear a damn thing you've got to say....

    THE COURT: Well, Mr. Stewart, we're trying our best to avoid you having any further difficulties here, and—

    THE DEFENDANT: I'm going to get my constitutional rights.

(Appellee's Br., Ex. 1 at 2.) After Stewart refused three more times to come forward to enter his plea, the magistrate judge recessed the hearing and removed Stewart from the courtroom. (*Id.* at 3–4.) Stewart later permitted the court to complete the hearing. (*Id.* at 5–8.)

**3.** The trial transcript begins as follows:

    THE COURT: We have for jury trial the case of the United States against Alexander Stewart.

    Mr. Stewart, I must first advise you—Yes, I have that.

    THE DEFENDANT: Have you read this?

    THE COURT: Yes, I read it.

    I must first advise you I do not think your decision is wise to represent yourself. The conduct of a trial in federal court is guided by the Federal Rules of Evidence, which are highly technical, and I don't think it is a good idea to represent yourself. I think it is a mistake and I advise against it.

    ....

    But I wanted to be sure you do want to represent yourself?

    THE DEFENDANT: Okay, Can I speak?

    THE COURT: Well, just tell me, yes or no, whether you want to represent yourself. That's all I need to know after I have advised you that I think it is a mistake.

    THE DEFENDANT: I want to put something on the record. I want to put something on the record. For one thing, the Ninth Circuit Court of Appeals said I am well-schooled in the law. If you look at *United States vs. Stewart*—

    THE COURT: I just want to know yes or no.

    THE DEFENDANT: Federal appell[ate] courts [have said] that I am well-schooled in the law.

    THE COURT: I gather from that that you want to represent yourself.

    THE DEFENDANT: I do, but I want to explain the situation I am under....

    THE COURT: No, I don't care about hearing any explanation. I just want to know if you want to represent yourself.

    THE DEFENDANT: If I don't make a record—....

    THE COURT: .... I am convinced you want to represent yourself, so we are going to start the trial right now.

(Trial Tr. at 3–5.) We have been unable to find a Ninth Circuit case captioned *"United States v. Stewart,"* although we have found *Stewart v. Corbin*, 850 F.2d 492 (9th Cir.1988), which affirmed the denial of a habeas petition filed by Alexander Stewart. The court rejected Stewart's claims that he was unlawfully shackled and gagged during his robbery trial. The court's opinion extensively and vividly describes conduct far worse than is present in this case. *See id.* at 493–500.

**4.** After Stewart interrupted the district court's warning about self-representation, the following exchange occurred:

    THE COURT: I am going to put you—

    THE DEFENDANT: If you do—Try it. Try to gag me and see what happens to your conviction.

    THE COURT: I am going to put you right outside the courtroom if you don't behave yourself.

    THE DEFENDANT: I have a right—

    THE COURT: I will tell you that right now.

    THE DEFENDANT: I don't have a right to know what's going on? .... You know [what] the Supreme Court said in the case of *Allen vs. Illinois*—....

(Trial Tr. at 5.) Later, Stewart said:

    Your honor, let me explain something. I am not going to give you trouble here. I know how far I can go under *[Illinois] versus Allen*. I know the case law, but just because I have objection and argument to you, that doesn't mean you can exclude me from court. There has got to be an instance where I get up and hit somebody....

(*Id.* at 11.)

several objections (concerning his broken eyeglasses; his lack of preparation; a government witness sitting in the gallery during preliminary proceedings; and the prison's failure to provide him with toothpaste, soap, and deodorant) that appear to have been made for the sole purpose of delay and agitation. (*See* Trial Tr. at 6–9, 12.) He asked for a lawyer, which the district court denied on the ground that he had previously chosen to represent himself. (*See id.* at 9–10.) He objected to his being tried in prison clothing, and the district court overruled the objection. (*See id.*)[5]

When the venire panel entered the courtroom, Stewart repeated some of these objections in a manner demonstrating a desire to exploit his *pro se* prisoner status.[6] Stewart objected to being tried in leg irons, and the district court overruled the objection. (*See id.* at 26–27.) In the presence of the jury, Stewart reiterated objections that he had earlier made without success. (*See id.* at 27–28.)

5. The trial record does not reveal the kind of clothing in which Stewart was dressed. The government's brief describes the clothing as "cleaned and pressed white prison-issue shirt and slacks." (Appellee's Br. at 3.) We were informed by appellant's counsel at argument that the appellant's name was on the shirt.

6. Immediately upon the venire panel's entrance into the courtroom, Stewart said:

THE DEFENDANT: I object to the jury panel. . . .

Mr. Bush [counsel for the government], do I have a right [not] to be tried in prison clothes? I am objecting to prison clothes?

THE COURT: Your objection is overruled.

THE DEFENDANT: I am asking for a lawyer here today to represent me. I am being tried without a lawyer. This is the United States of America. . . . The Constitution says every man, every person accused of a crime is entitled to an attorney. I am being tried here without an attorney. I am asking for an attorney to represent me. I've only been to the second grade. All I've been to is the second grade. I have no formal education. I didn't graduate from Wolfgang von Spitzenberg, Concord, Harvard, Yale. I do not have an education. I am asking for an attorney to be permitted by the court to represent me.

(Trial Tr. at 13.) Stewart later repeated his objections to the government's witness's presence in the gallery, his *pro se* status, and his

In his opening statement, Stewart told the jury that he punched the deputy director because he wanted to remain in federal custody. He said that if he had returned to the Arkansas prison from which he had come, he would have been killed by other inmates. (*See id.* at 34–37.) During the evidentiary phase of the trial, the government introduced the testimony of a courtroom deputy clerk who witnessed the March 1 incident, the deputy director, and an FBI agent who had interviewed Stewart after the March 1 incident. Stewart cross-examined these witnesses extensively, emphasizing facts relevant to his safety in the Arkansas prison. (*See id.* at 55–70, 78–117, 118–125.) When the government rested, Stewart said he had no witnesses.[7] After the district court asked the jury to return to the jury room until closing statements, Stewart said he wanted to take the stand, but the district court refused. (*See id.* at 127–128.) The jury deliberated a short time and returned a verdict of guilty on the assault charge and a verdict of not guilty on the retaliation charge. (*See id.* at 168.) The

broken eyeglasses. (*See id.* at 15.) He also talked continuously as the courtroom deputy clerk called the names of 28 prospective jurors. (*See id.* at 15–16.)

7. After the government's last listed witness had testified, the following occurred:

THE COURT: Mr. Bush, I take it, you rest at this time.

MR. BUSH: Yes, Your Honor, the Government rests at [this] time.

THE COURT: Since you have no witnesses subpoenaed, I presume you are the only witness.

THE DEFENDANT: I believe they heard my case.

THE COURT: You may take the stand.

THE DEFENDANT: I believe they heard my side of the story.

THE COURT: So you are not going to call any witnesses?

THE DEFENDANT: Your honor, I have no witnesses.

THE COURT: Then we will take up the instructions at this time.

. . . .

Members of the jury, while we are taking up these instructions—I didn't know he was going to rest. I am going to excuse you again while we settle the instructions. We will call you back. I don't think it will take too long, and then we will hear the arguments and you will get the case.

(Trial Tr. at 126–27.)

district court later imposed a sentence of 70 months. (R. at 8–11.) With the able assistance of court-appointed counsel (who also served as standby counsel during trial), Stewart appeals.

## II.

Stewart first argues that he was denied his right to "an impartial jury" because he was forced to wear prison clothing and leg irons during trial. *See* U.S. Const. amend. VI. An impartial jury should determine guilt or innocence based on the evidence presented at trial, not on irrelevant factors such as "official suspicion, indictment, [or] continued custody." *Holbrook v. Flynn,* 475 U.S. 560, 567, 106 S.Ct. 1340, 1345, 89 L.Ed.2d 525 (1986). A jury's impartiality can be undermined by circumstances that draw undue attention to irrelevant factors. When "certain practices pose such a threat to the 'fairness of the factfinding process' ... they must be subjected to 'close judicial scrutiny.'" *Id.* at 568, 106 S.Ct. at 1345 (quoting *Estelle v. Williams,* 425 U.S. 501, 503–04, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976)); *see also Gilmore v. Armontrout,* 861 F.2d 1061, 1071 (8th Cir.1988), *cert. denied,* 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1989). Nonetheless,

> It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.

*Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970). Thus, "in certain extreme situations," vigorous measures might be "'the fairest and most reasonable way to handle' a particularly obstreperous and disruptive defendant." *Holbrook,* 475 U.S. at 568, 106 S.Ct. at 1345 (quoting *Allen,* 397 U.S. at 344, 90 S.Ct. at 1061). "Courts must do the best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience." *Williams,* 425 U.S. at 504, 96 S.Ct. at 1693. We must balance the possibility of prejudice against the need to maintain order in the courtroom and custody over incarcerated persons. *See Holbrook,* 475 U.S. at 571–72, 106 S.Ct. at 1347.

Here, the district court justifiably required Stewart to wear leg irons during trial. First, the very act which Stewart was alleged to have committed, which he admitted to committing, and which the jury found he had committed, was a vicious assault upon a witness in the courtroom. It was flagrantly disrespectful of the judicial process. The district court was reasonable in trying to ensure that it did not happen again. Second, Stewart had again demonstrated his continuing disrespect for the court at his arraignment hearing. The district court could reasonably infer that Stewart would continue to be disruptive during trial. Third, Stewart displayed a hostile attitude during preliminary proceedings on the morning of trial. The district court could reasonably believe that he was likely to continue his disruptive conduct during trial. *Compare Allen,* 397 U.S. at 339–41, 90 S.Ct. at 1058–60 (describing defendant's disruptions during pretrial proceedings and trial). These facts provide an ample basis for the district court's decision to proceed to trial without removing Stewart's leg irons.[8] *See Williams,* 425 U.S.

8. It appears that the district court did not conduct a pretrial hearing or make explicit findings of fact on the record regarding the need to try Stewart in leg irons. *See Gilmore,* 861 F.2d at 1071 (sustaining conviction where "trial court expressly found that Gilmore presented a security threat"). Neither the Supreme Court nor this court have said that a hearing and explicit findings are always necessary. Rather, trial judges are "given sufficient discretion to meet the circumstances of each case." *Allen,* 397 U.S. at 343, 90 S.Ct. at 1061. Given the unique circumstances of this case, we think the district court did not abuse its discretion by overruling Stewart's objection to leg irons without a hearing and explicit findings. The district court was entitled to rely on the face of the indictment, which charged Stewart with assaulting a witness in a federal judicial proceeding (R. at 1), the record that had been made during Stewart's arraignment in the same case, and its observations of matters that are reflected in the trial transcript. *Cf. United States v. Theriault,* 526 F.2d 698, 700 (5th Cir.) (retaining jurisdiction and remanding

at 505 n. 2, 96 S.Ct. at 1693 n. 2 ("a defendant cannot be allowed to abort a trial and frustrate the process of justice by his own acts"), *cited in Stewart,* 850 F.2d at 497. In addition, at trial, Stewart himself undermined his presumption of innocence by admitting that he was being held in a maximum security prison, (Tr. at 36), and frequently admitting that he punched the deputy director, *(see, e.g., id.* at 35, 37, 42, 150, 156, 158–60). *See Holloway v. Alexander,* 957 F.2d 529, 530 (8th Cir.1992) ("Holloway's own testimony about his criminal history and sentences made it clear he was a dangerous felon and a likely flight risk"). Thus, the district court did not err when it overruled Stewart's objection to wearing leg irons.

■ Having resolved Stewart's more serious objection to wearing leg irons, we also find no error in his wearing prison clothing. The Supreme Court has held that the government "cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes." *Williams,* 425 U.S. at 512, 96 S.Ct. at 1697; *see also United States v. Grady,* 997 F.2d 421, 424 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 416, 126 L.Ed.2d 363 (1993). Prison clothing is inherently prejudicial because it informs the jury of "impermissible factors," such as the fact that a defendant already has been deprived of his liberty. *See Williams,* 425 U.S. at 503–05, 96 S.Ct. at 1692–94. In this case,

however, the circumstances surrounding the alleged crime made it unavoidable that the jury would eventually learn that Stewart was a prisoner. *See Holloway,* 957 F.2d at 530. Furthermore, the appearance of a defendant in prison clothing is less prejudicial than the appearance of a defendant wearing leg irons, which indicates that he not only has already been deprived of his liberty but also is particularly likely to flee or harm someone. Thus, *Williams* must be viewed in the context of a defendant who is not wearing leg irons. Prison clothing is inherently prejudicial only if a defendant's appearance does not otherwise inform the jury of other, more prejudicial impermissible factors. " 'No prejudice can result from seeing that which is already known.' " *See Williams,* 425 U.S. at 507, 96 S.Ct. at 1694 (quoting *United States ex rel. Stahl v. Henderson,* 472 F.2d 556, 557 (5th Cir.), *cert. denied,* 411 U.S. 971, 93 S.Ct. 2166, 36 L.Ed.2d 694 (1973)); *see also Holloway,* 957 F.2d at 530; *Scott v. James,* 902 F.2d 672, 674 (8th Cir.), *cert. denied,* 498 U.S. 873, 111 S.Ct. 198, 112 L.Ed.2d 160 (1990). Here, Stewart's appearance would have been no more favorable had he worn leg irons with *civilian* clothing. Thus, the district court did not err when it overruled Stewart's objection to wearing prison clothing.[9]

### III.

■ Stewart next argues that he was denied his right to counsel. *See U.S. Const.*

to allow district court to supplement record with reasons for trying defendant in shackles and to specify portions of record of which district court took judicial notice), *on remand,* 531 F.2d 281, 284–85 (5th Cir.) (affirming conviction), *cert. denied,* 429 U.S. 898, 97 S.Ct. 262, 50 L.Ed.2d 182 (1976).

The presentence report also reveals that Stewart had been convicted of escape. *See State v. Stewart,* 196 N.J.Super. 138, 481 A.2d 838 (App. Div.1984). We are unable to determine whether the district court was aware of this conviction at the time it denied Stewart's objection.

**9.** We need not address the question whether Stewart was "compelled" to wear prison clothing simply because he made an objection on the record. *See Williams,* 425 U.S. at 512–13, 96 S.Ct. at·1697; *see also Felts v. Estelle,* 875 F.2d 785, 786 (9th Cir.1989) (holding that district court "may reasonably infer that [defendant's] decision [to dress in jail clothes] was predicated upon a conscious attempt to elicit sympathy from

the jury"). The government argues that Stewart was informed seven weeks before trial that he would be permitted to wear civilian clothes at trial, thus suggesting that Stewart intentionally neglected to arrange for civilian clothes so that he could object on the morning of trial. The record as a whole is not inconsistent with this suggestion. The particular evidence of Stewart's preparation for trial may be insufficient, however, to have allowed the district court to find that Stewart was not "compelled" to go to trial in prison clothing. (*See* Trial Tr. at 164–67.)

We also need not address Stewart's argument that reversal is compelled by *Riggins v. Nevada,* —— U.S. ——, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992). Although *Riggins* may permit a harmless-error analysis in this context, *see Rhoden v. Rowland,* 10 F.3d 1457, 1459 (9th Cir.1993); *Castillo v. Stainer,* 983 F.2d 145, 148–49 (9th Cir.1992), *amended by* 997 F.2d 669, 669 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 609, 126 L.Ed.2d 574 (1993), we have found no error at all.

amend. VI. He contends that his waiver was invalid and that the district court should have granted his request for counsel. We have held, "A defendant may represent himself only if he makes a 'knowing, intelligent, and voluntary waiver' of his Sixth Amendment right to counsel." *United States v. Veltman,* 9 F.3d 718, 720 (8th Cir.1993) (quoting *United States v. Yagow,* 953 F.2d 427, 430 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 103, 121 L.Ed.2d 62 (1992)); *see also Faretta,* 422 U.S. at 835–36, 95 S.Ct. at 2541. We will find a valid waiver if a district court adequately warns a defendant or if, on the record as a whole, we determine that the defendant knew and understood the disadvantages of self-representation. *See Veltman,* 9 F.3d at 720. Here, the district court warned Stewart and attempted several times to obtain an explicit statement from him that he understood the warning, but Stewart interrupted the court each time. *See supra* at 913 n. 3. We believe the district court's colloquy with Stewart and the record as a whole establish that Stewart made a knowing, intelligent, and voluntary waiver of his right to counsel. We also reiterate that " 'the right to counsel is a shield, not a sword. A defendant has no right to manipulate his right for the purpose of delaying and disrupting the trial.' " *Meyer v. Sargent,* 854 F.2d 1110, 1113 (8th Cir.1988) (quoting *United States v. White,* 529 F.2d 1390, 1393 (8th Cir.1976)). We conclude that the district court did not deprive Stewart of his right to counsel.

### IV.

■ Stewart next argues that the district court erred by commenting on his decision not to testify. *See* U.S. Const. amend. V; *Griffin v. California,* 380 U.S. 609, 613–14 & n. 5, 85 S.Ct. 1229, 1232–33 & n. 5, 14 L.Ed.2d 106 (1965). Stewart stated on the record, in the jury's presence, that he did not want to take the witness stand because he essentially had given all his testimony in the course of examining the government's witnesses. *See supra* at 914 n. 7. Furthermore, the district court's comment—"I didn't know he was going to rest"—was merely a transitional statement intended to inform the jury of the progress of the trial. *See United*

*States v. Johnson,* 12 F.3d 827, 836 (8th Cir.1994). The comment could not have had a prejudicial impact on Stewart's Fifth Amendment right against self-incrimination. Thus, the district court did not make an improper comment on Stewart's decision not to take the witness stand.

### V.

■ Stewart next argues that the district court erred when it did not permit him to testify. *See Rock v. Arkansas,* 483 U.S. 44, 51–53, 107 S.Ct. 2704, 2709–10, 97 L.Ed.2d 37 (1987) (relying on U.S. Const. amends. V, VI, XIV). A defendant's right to testify is not unqualified. It must, at times, yield to interests of order and fairness. *United States v. Jones,* 880 F.2d 55, 59 (8th Cir.1989). A defendant must exercise the right "at the evidence-taking stage of trial. Once the evidence has been closed, whether to reopen for submission of additional testimony is a matter left to the trial court's discretion." *Id.* This rule "imposes a commonsense requirement that the right to testify be exercised in a timely fashion." *Id.* at 60. Here, when the government rested, Stewart unequivocally stated his desire not to introduce evidence. Stewart stated his desire to testify only after the district court had informed the jury that it would next hear closing statements. *See supra* at 914 n. 7. Stewart thus failed to assert his right to testify during the evidence-taking stage of the trial. In light of Stewart's numerous previous efforts to delay and disrupt the trial, the district court did not abuse its discretion when it refused to permit Stewart to testify.

### VI.

■ Stewart next argues that even if all of the foregoing arguments fail, their cumulative effect deprived him of a fair trial. He relies on *Harris v. Housewright,* 697 F.2d 202 (8th Cir.1982), where we held that the cumulative effect of eleven enumerated mistakes by trial counsel amounted to deficient performance. *See id.* at 206–11. Stewart cannot rely on *Harris* because we have since overruled it. We now believe that individual

constitutionally insignificant errors cannot be aggregated to create a constitutional violation. *See Girtman v. Lockhart,* 942 F.2d 468, 475 (8th Cir.1991). Thus, this argument fails as a matter of law.

### VII.

Finally, Stewart argues that the district court erred when it adjusted his offense level upward three levels because the victim of the assault was an "official victim." A district court is permitted to adjust a defendant's offense level in this manner if "the victim was a government officer ... and the offense of conviction was motivated by such status." U.S.S.G. § 3A1.2(a). Stewart contends that this guideline applies only to officers of the federal government, not to officers of a state government. Stewart has cited no authority for this argument, and we see absolutely no basis for limiting the guideline in the manner Stewart suggests. Thus, the district court did not err when it adjusted Stewart's offense level on the ground that the deputy director was an "official victim."

### VIII.

In conclusion, having found no error, we affirm Stewart's conviction and the sentence imposed by the district court.