United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 97-2545

United States of America,        \*

                                    \*

        Plaintiff - Appellee,    \*

                                    \*   Appeal from the United States

     v.                            \*   District Court for the

                                    \*   Western District of Missouri.

Gerald Lee Patterson,        \*

                                    \*

        Defendant - Appellant.   \*

_____

Submitted: January 14, 1998

Filed: April 3, 1998

_____

Before LOKEN, FLOYD R. GIBSON, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Gerald Lee Patterson was convicted of conspiracy to manufacture and distribute methamphetamine, drug possession and trafficking, and using and carrying a firearm in relation to a drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 18 U.S.C. § 924(c). Patterson appeals from the judgment, seeking dismissal or a new trial. He argues that the federal drug trafficking statute is unconstitutional, that he was denied a speedy trial, and that the district court[1] erred by not suppressing evidence seized from

_____

[1]The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

his vehicle, by not granting his motion for severance, and by permitting him to represent himself without a knowing and voluntary waiver of counsel.[2] We affirm.

Evidence at trial showed that Patterson was involved in a drug conspiracy with a number of other individuals. The second superseding indictment charged eighteen defendants. All eventually pled guilty except for Patterson and Trent Mosby who went to trial. Ten counts were submitted to the jury against Patterson, including the conspiracy charge, two counts of possession with intent to distribute methamphetamine and three counts of distributing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, the use and carrying of a firearm in relation to a drug offense in violation of 18 U.S.C. § 924(c), and three counts seeking criminal forfeiture.

Patterson and Bobby Day used Day's residence in Springfield, Missouri as a delivery point for methamphetamine from several sources. With the help of Mosby they provided chemicals to methamphetamine manufacturing labs in Missouri and Arkansas and received drugs from those labs which were then weighed and packaged at Day's home.

Patterson was responsible for selling the methamphetamine and collecting the proceeds. Gary Warren was a distributor for Patterson who bought three to twelve grams of methamphetamine at a time, but sometimes Patterson would front him an amount worth up to $1,200. From February to June of 1996 Patterson weighed, packaged, and sold drugs at Warren's residence, and in January he had taken manufacturing chemicals there after another lab had been closed down. A July 1996 search at Warren's residence uncovered scales, baggies, manufacturing chemicals, and

___

[2]Patterson has filed a motion for leave to supplement the record on appeal with several items of evidence which were not offered in the district court. The motion is denied. See Dakota Indus., Inc. v. Dakota Sportswear, Inc., 988 F.2d 61, 63 (8th Cir. 1993).

a methamphetamine cutting agent, all of which Warren testified had been brought there by Patterson or purchased at his direction.

A number of individuals also sold drugs for Patterson during 1995 and 1996 from a bar he operated in Springfield, the Sunshine Saloon. Kerry Miller testified that she had seen Patterson carry drugs and guns in his car and use a gun to collect a drug debt. Mark Bloznik reported that on one occasion Patterson came to his home to collect a drug bill, pointed a handgun at his forehead, and threatened to blow his brains out. Rick Armstrong testified that during a dispute over manufacturing methamphetamine Patterson threatened to blow up his parents' house. Several witnesses related that the Sunshine Saloon was known as a place to buy drugs and did very little other business, and that some dealers preferred to buy drugs from Patterson's car because of the bar's reputation.

On June 28, 1996 one of Patterson's distributors, Tonish Fewell, introduced an undercover police officer, Troy Smith, to him. Smith purchased some methamphetamine which he saw Patterson cut from a large chunk in his car. Smith also went with Fewell to deliver a VCR and clothing to Patterson in payment for drugs. On July 1 and 3 Fewell purchased drugs from Patterson while under police surveillance and after Patterson had refused to sell to Smith because he believed he was an undercover agent. On July 3 Patterson showed Fewell a rock of methamphetamine which he said weighed one half pound; their conversation was recorded.

Some of the evidence at trial was obtained as a result of two vehicle searches. On January 28, 1996 a state trooper working in drug interdiction stopped James Layne for suspected drug possession and searched the car with Layne's consent. In a suitcase in the back seat he found five plastic baggies containing approximately five ounces of methamphetamine. Layne had picked up the drugs from the residence of Robert Wiedenmann near Warsaw, Missouri to deliver to Patterson and Day in Springfield. Wiedenmann had been manufacturing and delivering drugs to them beginning in the fall

of 1995. Layne had also been acquiring manufacturing chemicals from Patterson, Day, and Mosby and delivering them to Wiedenmann and Joe Davis.

Patterson's vehicle was searched on July 5, 1996, after Springfield police officer Michael Casterdale responded to a call about an attempted car theft involving a rifle. When Casterdale arrived at the scene, he found Patterson standing behind a red Mercedes which he said he was repossessing. Casterdale asked him whether he had a gun; Patterson admitted he had one in his car behind the Mercedes. Casterdale looked inside Patterson's car and found a loaded revolver and holster between the driver's seat and the console and a black powder pistol and a large amount of cash in the lid of the console. Patterson explained that he owned a bar and was carrying cash from it, but he was arrested for carrying a concealed weapon.

After Patterson's arrest another individual at the scene told Casterdale that Patterson sold drugs out of his car and kept them in the grille area in magnetic key cases. Casterdale called in a dog for another search. The dog alerted on the grille area, a *Crown Royal* bag containing money, the cash in the console lid, and an area underneath the back seat where drugs were later found after the car was impounded. The police eventually uncovered a magnetic key holder containing methamphetamine attached to the emergency break release pedal. At trial Patterson claimed that Casterdale had told him he wanted to search the car but that Patterson would be free to go if he did not find any drugs. Patterson did not deny that a gun was found in his car, but he claimed that Casterdale did not find "anything illegal" even after searching his car several times. He complains he was arrested anyway and that no drugs were found until after he had been in jail for one hour.

Patterson was released on bond on July 5 but was taken back into custody with a federal arrest warrant on July 12 when he was charged in the first superseding conspiracy indictment. All of those charged pled guilty except for Patterson and Mosby who went to trial on December 10, 1996. On the first day of trial Patterson

moved to represent himself. The court granted the motion after discussing with him the implications of self representation, questioning him, and telling his counsel to be available to advise him. At trial Patterson twice moved to dismiss on the basis that the July 5 search of his vehicle was illegal; the motions were denied. After a five day trial the jury returned a verdict of guilty on all ten counts.

Patterson contends on appeal that § 401(a)(1) of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 841(a)(1), is unconstitutional. He argues that Congress does not have the authority under the Commerce Clause to regulate the manufacture and distribution of controlled substances because these activities do not substantially affect interstate commerce. See United States v. Lopez, 514 U.S. 549, 559 (1995). This argument lacks merit. Our circuit has held that intrastate drug activity affects interstate commerce and that Congress may regulate both intrastate and interstate drug trafficking under the Commerce Clause. See United States v. Brown, 72 F.3d 96, 97 (8th Cir. 1995) (citing United States v. Curtis, 965 F.2d 610, 616 (8th Cir. 1992)), cert. denied, 116 S.Ct. 2581 (1996). In particular, section 841(a)(1) is a valid exercise of the Commerce Clause power under Lopez. See id.; United States v. Leshuk, 65 F.3d 1105, 1111-12 (4th Cir. 1995).

Appellant also claims that he was detained too long before trial in violation of the Speedy Trial Act. See 18 U.S.C. §§ 3161-3174. He was incarcerated from July 12, 1996 to the beginning of trial on December 10. Although the Act provides that generally a defendant must be tried within seventy days of the first appearance on an indictment, see 18 U.S.C. § 3161(c)(1), it also provides for extensions of that period by listing specific exclusions, see id. § 3161(h). Where multiple defendants are joined for trial and no motion for severance has been granted, the statutory time period does not begin to run until the last codefendant has been indicted or arraigned, see Henderson v. United States, 476 U.S. 321, 323 n.2 (1986), and exclusions of time attributable to one defendant apply to all codefendants, see 18 U.S.C. § 3161(h)(7); United States v. Jones, 801 F.2d 304, 316 (8th Cir. 1986). Delays due to pretrial

motions made by Patterson and his codefendants, the grant of a continuance in the interest of justice, and mental competency examinations of codefendants were excludable in accordance with §§ 3161(h)(1)(F), 3161(h)(8)(A), and 3161(h)(1)(A). For these reasons, Patterson has not shown that the Speedy Trial Act was violated. See United States v. Sarno, 24 F.3d 618, 622 (4th Cir. 1994); Jones, 801 F.2d at 316.

Appellant also argues that his detention without bail from the date of his second arrest violated his sixth amendment right to a speedy trial. The delay in his case was not sufficiently long to be presumptively prejudicial, particularly since the reason for the delay was a series of pretrial motions brought by him and his codefendants. See Robinson v. Leapley, 26 F.3d 826, 832 (8th Cir. 1994); United States v. Green, 526 F.2d 212, 214-15 (8th Cir. 1975). Although Patterson asserted his speedy trial right and prejudice may include "oppressive pretrial incarceration," Barker v. Wingo, 407 U.S. 514, 532 (1972), he has not demonstrated that his defense was impaired by "dimming memories and loss of exculpatory evidence." Doggett v. United States, 505 U.S. 647, 654 (1992). Under all the circumstances, his constitutional right to a speedy trial was not violated. See Barker, 407 U.S. at 530.

Patterson claims that the trial court erred in denying his motions to dismiss due to illegally seized evidence.[3] He argues that the initial search of his car for a gun was unreasonable under the fourth amendment and that the police lacked probable cause to conduct a warrantless search for drugs after his arrest when no contraband was found in plain view. The district court's ultimate legal conclusion as to whether evidence should be suppressed, including the determination that a given set of facts constituted probable cause, is reviewed de novo. See Ornelas v. United States, 116 S.Ct. 1657, 1659 (1996).

---

[3]Patterson argues that his pro se motions to dismiss are equivalent to a motion to suppress illegally obtained evidence, and they are so reviewed.

-6-

The search of appellant's car did not violate the fourth amendment prohibition on unreasonable searches and seizures. Officer Casterdale's initial questioning of Patterson was in the nature of a brief investigatory contact after receiving a report of a car theft by an armed individual; there was reasonable suspicion of criminal activity justifying further inquiry. See Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984); Terry v. Ohio, 392 U.S. 1, 19 n.16, 22-23 (1968). Once Patterson admitted that he had a gun in his car, Casterdale properly seized it and lawfully arrested him for carrying a concealed weapon in violation of Mo.Rev.Stat. § 571.030.1(1). See United States v. Boucher, 909 F.2d 1170, 1173 (8th Cir. 1990); United States v. Peyton, 108 F.3d 876, 877 (8th Cir. 1997).[4] Even if Patterson had not admitted the presence of a weapon, a search of the passenger compartment, including places where weapons could be hidden, may be proper within the context of a Terry stop to ensure officer safety. See Michigan v. Long, 463 U.S. 1032, 1049 (1983). This is true even where the occupant is no longer in the vehicle when the search is conducted. See United States v. Cummins, 920 F.2d 498, 502 (8th Cir. 1990). The search of the vehicle after his arrest was permissible both as a search of the passenger compartment incident to the arrest, see New York v. Belton, 453 U.S. 454, 460 (1981); United States v. Maza, 93 F.3d 1390, 1396-97 (8th Cir. 1996), cert. denied, 117 S.Ct. 1008 (1997), and as a more thorough inventory search of the car's contents, see Peyton, 108 F.3d at 877; Cummins, 920 F.2d at 502.

Even if appellant were correct in contending that the vehicle search went beyond the scope of a search incident to arrest or an inventory search, a warrantless search of the automobile was permissible because the police had probable cause to believe that

---

[4]Appellant's motion to supplement the record included a Missouri bond form indicating that his arrest was for unlawful use of a weapon. His counsel suggested at oral argument that the gun was visible in the car and that therefore the arrest was invalid. Carrying a concealed weapon is a subcategory of unlawful use of a weapon under Mo.Rev.Stat. § 571.030.1, however, and a weapon may be "concealed" under Missouri law even if visible from a particular angle, see Boucher, 909 F.2d at 1173.

contraband or evidence of criminal activity would be found. See California v. Carney, 471 U.S. 386, 390-95 (1985). The discovery of an additional gun and large amounts of cash in the car, combined with the information that Patterson had been dealing drugs out of his Bronco (the source of the information being the same individual who had accurately reported that Patterson was armed), created probable cause to conduct a thorough search of the vehicle. Contrary to appellant's contention that any probable cause dissipated when no drugs were found in the initial search, the drug dog's alerts on items containing suspected drug proceeds provided probable cause to continue the search, which led to the discovery of methamphetamine. See United States v. Bloomfield, 40 F.3d 910, 919 (8th Cir. 1994) (en banc). Appellant's motions were properly denied.

Patterson also contends that the district court abused its discretion in refusing to sever his trial from that of his codefendant. He argues that a separate trial would have allowed him to subpoena Trent Mosby who exercised his privilege against self-incrimination at their joint trial. He further maintains that severance was required to ensure that each defendant would receive a fair trial, relying on DeLuna v. United States, 308 F.2d 140, 141 (5th Cir. 1962) ("[i]f an attorney's duty to his client should require him to draw the jury's attention to the possible inference of guilt from a co-defendant's silence, the trial judge's duty is to order that the defendants be tried separately.").

Federal Rule of Criminal Procedure 8(b) provides for the joinder of defendants alleged to have participated in the same criminal activity, see Fed. R. Crim. P. 8(b), and "rarely, if ever, will it be improper for co-conspirators to be tried together," United States v. Wint, 974 F.2d 961, 965 (8th Cir. 1992). The district court may grant a severance where a defendant shows that he is prejudiced by a joint trial, however. See Fed. R. Crim. P. 14. On appeal the district court's decision is reviewed for abuse of discretion, which requires a showing of clear prejudice. See United States v. Jackson, 64 F.3d 1213, 1217 (8th Cir. 1995). A defendant must establish more than

"the mere fact that his chances for acquittal would have been better had he been tried separately," United States v. O'Connell, 841 F.2d 1408, 1432 (8th Cir. 1988); rather, reversal is required only if joinder "had substantial and injurious effect or influence in determining the jury's verdict," United States v. Lane, 474 U.S. 438, 449 (1986) (quoting Kotteakas v. United States, 328 U.S. 750, 776 (1946)).

Patterson has failed to show that the joint trial prejudiced his right to a fair trial. See O'Connell, 841 F.2d at 1432. He has not demonstrated that Mosby would have been willing to testify at a separate trial, and he has not identified any testimony that Mosby had to offer which would have exculpated him. See United States v. Kopelciw, 815 F.2d 1235, 1238 (8th Cir. 1987); United States v. Reed, 733 F.2d 492, 508-09 (8th Cir. 1984). Moreover, his argument about the possible advantage to him of comments he might have made about Mosby's silence is purely hypothetical since he did not attempt to comment at trial or to make a record to show any prejudice. See Jackson, 64 F.3d at 1217-18. The district court did not abuse its discretion in denying Patterson's motion for severance.

Finally, Patterson claims that the district court failed to determine that his waiver of his right to counsel was voluntary, knowing, and intelligent before allowing him to represent himself at trial. See United States v. Yagow, 953 F.2d 427, 430 (8th Cir. 1992). Appellant contends that he did not understand the ramifications of proceeding pro se and that he did not know that different counsel could be appointed for him. He argues that the district court should have asked about his reasons for wanting to represent himself in order to evaluate the voluntariness of his decision and that the court did not conduct a "thorough and comprehensive formal inquiry . . . to demonstrate that [he was] aware of the nature of the charges, the range of allowable punishments . . . and [was] fully informed of the risks of proceeding pro se." United States v. Taylor, 113 F.3d 1136, 1141 (10th Cir. 1997) (quoting United States v. Willie, 941 F.2d 1384, 1388 (10th Cir. 1991)).

A criminal defendant's sixth amendment right to the assistance of counsel includes the related right to waive counsel and conduct his own defense. See Faretta v. California, 422 U.S. 806, 807 (1975). Before permitting a defendant to exercise his constitutional right to serve as his own attorney, however, the court must be satisfied that his waiver of appointed counsel is knowing and voluntary. See Godinez v. Moran, 509 U.S. 389, 400 (1993). The court is not required to ensure that the defendant is capable of representing himself as well as a trained and experienced lawyer, only that he understands the risks involved in representing himself and that he has knowingly and intelligently chosen self representation. See Faretta, 422 U.S. at 835. The grant of Patterson's motion to represent himself at trial is reviewed de novo, and it will be affirmed if the record shows either that the court adequately warned him or that, under all the circumstances, he knew and understood the dangers and disadvantages of self representation. See United States v. Stewart, 20 F.3d 911, 917 (8th Cir. 1994); United States v. Veltman, 9 F.3d 718, 720 (8th Cir. 1993).

On the record in this case, appellant's decision to exercise his constitutional right to proceed pro se was knowing, intelligent, and voluntary. When Patterson orally moved to represent himself on the first day of trial, the district court recognized his right to do so but proceeded to question him about his understanding of the dangers and disadvantages of his decision. The court specifically asked him if he understood that it was "somewhat like a doctor performing surgery on himself." He answered that he did. The court advised him more than once that it believed he was making a serious mistake and pointed out that he knew very little about law and the rules of criminal procedure. Despite these warnings, Patterson insisted that he wanted to represent himself. The district court warned Patterson about the grave risks involved, stressed that legal and procedural training is important in a criminal trial in federal court, and asked whether he understood the ramifications of his decision. This inquiry is sufficient to establish a valid waiver. See Faretta, 422 U.S. at 835-36 (warning that court thought it was a mistake and that defendant would have to follow rules of trial procedure was sufficient); United States v. Christian, 861 F.2d 195, 197 (8th Cir. 1988) (court's

-10-

warning that defendant would have to follow rules of criminal procedure despite his lack of familiarity with them demonstrates defendant knew hazards of conducting his own defense). Once the court was satisfied that Patterson's decision was knowing and voluntary, it was constitutionally required to allow him to represent himself at trial. See Faretta, 422 U.S. at 836.

Although the district court could have conducted a more detailed inquiry, see, e.g., Willie, 941 F.2d at 1388 (questioning the defendant about his understanding of the charges and possible punishments); Taylor, 113 F.3d at 1141 (inquiry about the reasons for the desire to proceed pro se can help to ensure knowing and intelligent waiver), Patterson had the knowledge available to make a voluntary and intelligent waiver of his right to counsel and to choose to represent himself. See Yagow, 953 F.2d at 431; Meyer v. Sargent, 854 F.2d 1110, 1114-15 (8th Cir. 1988) (specific warning on the record is preferred but not required where record shows defendant had necessary knowledge from other sources). In reviewing a waiver of counsel the court looks at the facts and circumstances surrounding the case, including the pro se defendant's background, experience, and conduct. See Edwards v. Arizona, 451 U.S. 477, 482 (1981) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). Patterson had five years of college education and prior experience with criminal trials. A review of the trial record shows that he was quite articulate and that he had a sense of how to put on a defense. He tried to undermine the credibility of government witnesses on cross-examination by using their prior inconsistent statements and plea agreements with the prosecution. He also presented his own witnesses to testify about his good character and lack of involvement with drugs and to contradict the government's evidence. Patterson's education, knowledge of the criminal justice system, and conduct at trial showed that he was "able to grasp the nature of the charges against him," Christian, 861 F.2d at 197, and that he "had the intellectual capacity required to understand the consequences of his decision," Veltman, 9 F.3d at 721.

The court appointed standby counsel who remained present throughout the trial and who advised Patterson on his decision to testify, addressed the bench on several occasions, and assisted him in presenting his case in chief. This is sufficient to show that Patterson was aware of his right to counsel. See United States v. Day, 998 F.2d 622, 626 (8th Cir. 1993). These factors, combined with the district court's warnings on the record, demonstrate that his waiver was valid and that he knowingly and intelligently chose to act as his own lawyer. See id. at 626-27; Meyer, 854 F.2d at 1114-15.

Where a defendant moves for replacement counsel and is told that he must choose between his current counsel and proceeding pro se, his waiver may not be voluntary, depending on the circumstances. See Gilbert v. Lockhart, 930 F.2d 1356, 1360 (8th Cir. 1991). Patterson never sought the appointment of substitute counsel, however, but rather moved to represent himself without complaining to the court that his retained counsel was incompetent, unprepared, or otherwise unable to provide adequate representation. His argument on appeal that his waiver was not voluntary is therefore unsubstantiated, and since he failed to establish good cause for the appointment of new counsel, his decision to waive counsel is deemed voluntary. See Taylor, 113 F.3d at 1140.

Since the drug trafficking statute under which Patterson was convicted is constitutional and he was not denied a speedy trial, he is not entitled to a dismissal of the charges against him. He has also failed to show that the district court erred in refusing to suppress evidence, in denying his motion for severance, and in determining that his decision to waive counsel and represent himself was knowing and voluntary. He is therefore not entitled to a new trial. The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.