# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1484

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal From the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Qusai Mahasin, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 15, 2005
Filed: March 31, 2006

_____

Before SMITH, HEANEY, and BENTON, Circuit Judges.

_____

HEANEY, Circuit Judge.

On October 28, 2004, Qusai Mahasin was convicted of assaulting an Assistant United States Attorney engaged in official duties, in violation of 18 U.S.C. § 111(a)(1). The district court[1] sentenced Mahasin to sixty months imprisonment to be served consecutively to his sentence from previous convictions. Mahasin alleges several issues on appeal. We affirm.

_____

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

# BACKGROUND

In December 2002, Mahasin was on trial in federal court for the following charges: possession of heroin with intent to distribute, use of a firearm during a drug trafficking crime, attempted murder of a government witness, and use of a gun during the attempted murder of a government witness. On December 13, 2002, as the verdict was being read, Mahasin rushed the prosecutor, Assistant United States Attorney Thomas J. Meehan. The sounds of the melee and statements made by Mahasin were captured both by an audiotape recorder and the court reporter. As a result, a grand jury issued a two-count indictment, charging Mahasin with the voluntary and intentional injuring of a federal officer performing his official duties, in violation of 18 U.S.C. § 1503(a), and the intentional assault of a federal officer while the officer was performing his official duties, in violation of 18 U.S.C. § 111(a)(1).

For the proceedings, the district court ordered Mahasin restrained with leg irons, arm irons, shackles, and a stun belt. The court determined restraints were necessary following an ex parte meeting with United States marshals. At the beginning of the trial and prior to having the jury brought in, the district court requested input from the prosecutor, defense counsel, and Mahasin, who objected to the restraints. The court noted on the record that it ordered restraints based on the following: (1) Mahasin's prior conviction for the attempted murder of a government witness, (2) his recent assaults on both a deputy sheriff and a fellow inmate, (3) his alleged courtroom assault on a federal prosecutor in a courtroom in the same district, and (4) Mahasin's alleged threats to his own court-appointed attorney.

Prior to trial, Mahasin notified the court that he wished to defend himself, believing his court-appointed counsel would be ineffective because Mahasin had threatened the attorney's personal safety just days before. Following a series of questions and warnings, Mahasin maintained that he wished to represent himself, but asked if his appointed counsel could advise him if he had questions. The court agreed

to let Mahasin represent himself and ordered his previous attorney to act as stand-by counsel to assist Mahasin in the trial. Thereafter, Mahasin's stand-by counsel actively participated in the proceedings, addressing the court and attending bench conferences on Mahasin's behalf.

Before the trial began, Mahasin also moved the court to accept his stipulation regarding the term of imprisonment for his previous convictions, and prohibit the government from presenting evidence regarding his previous convictions. The court denied his motion and the government presented testimony regarding the nature and circumstances of Mahasin's previous convictions during the guilt phase of the trial.

Numerous eyewitnesses to the December 13, 2002 events, including the court reporter, a court clerk, another Assistant United States Attorney, and multiple United States deputy marshals, testified during the trial. Following trial, the jury acquitted Mahasin of injuring an officer, and convicted him of assaulting an officer. Mahasin was subsequently sentenced to a term of imprisonment of sixty months, to be served consecutively to his sentence resulting from the previous convictions. Mahasin appeals.

## ANALYSIS

Mahasin first argues for reversal on the basis that the district court erred by not accepting his stipulation regarding his prior convictions. We review the district court's evidentiary rulings for abuse of discretion. Old Chief v. United States, 519 U.S. 172, 174 n.1 (1997) (citing United States v. Abel, 469 U.S. 45, 54-55 (1984)); United States v. Hill, 249 F.3d 707, 710 (8th Cir. 2001). The district court's discretion is broad, and we will overturn its decision to admit evidence of other crimes "only if it can be shown that the 'evidence clearly had no bearing upon any issues involved.'" United States v. Green, 151 F.3d 1111, 1113 (8th Cir. 1998) (quoting United States v. Turner, 104 F.3d 217, 222 (8th Cir. 1997) (further citation

omitted)).  If we determine that the evidence of a previous conviction was improperly admitted, we will reverse the conviction if  "there is a reasonable possibility that the improperly admitted evidence contributed to the conviction."  United States v. Smith, 578 F.2d 1227, 1234 (8th Cir. 1978) (quoting Schneble v. Florida, 405 U.S. 427, 432 (1972)).

Generally, the government has discretion to determine how it will present its case and is not required to accept a defendant's stipulations.  Old Chief, 519 U.S. at 186-87.  But where the defendant's status as a felon is an element of the crime charged, all the jury needs to know is that he is a felon for purposes of the crime charged, and it is unnecessary for the government to offer additional, potentially prejudicial, evidence regarding the facts and circumstances of the previous bad acts. Old Chief, 519 U.S. 190-91.  "If the evidence goes to an issue other than character, such as intent, motive, etc., the court then asks whether Federal Rule of Evidence 402's relevancy requirement is met and whether the probative value of the evidence is substantially outweighed by the prejudicial effect under Federal Rule of Evidence 403."  Hill, 249 F.3d at 710.  Federal Rule of Evidence 403 allows the district court to exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  Old Chief, 519 U.S. at 180.

The government argues that Mahasin's prior convictions were "inextricably" linked to the instant case, the evidence of previous convictions was presented for

purposes of showing intent, and therefore, it was properly admitted.[2]  We disagree. The nature of Mahasin's previous convictions were highly prejudicial and had very little probative value in light of the wealth of eyewitness testimony available. Therefore, the district court, under Rule 403, should have accepted Mahasin's stipulation regarding his previous convictions.  Nonetheless, although we find that the evidence was improperly admitted, "the properly admitted evidence of guilt is so overwhelming . . . that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error."  Schneble, 405 U.S. at 430.  Numerous eyewitnesses testified consistently to the events, which were also captured by recording equipment.  Furthermore, in spite of the highly prejudicial evidence of his previous convictions, the jury acquitted Mahasin of the charge of injuring a federal officer.

Mahasin next argues that his conviction should be reversed because the district court improperly ordered him restrained with leg irons, arm irons, shackles, and a stun belt while he defended himself in the trial.  A screen was set up and the courtroom furniture was arranged so that the jury could not see that Mahasin was restrained. Nonetheless, the restraints prohibited him from taking notes and standing when the jury entered and while addressing the court.  He also complained that the restraints prohibited him from reviewing paperwork during his closing argument.  While presenting closing argument, Mahasin voluntarily showed the jury his shackles.

The Constitution "permits a State to shackle a criminal defendant only in the presence of a special need."  Deck v. Missouri, 125 S. Ct. 2007, 2010 (2005).  We recognize that "[v]isible shackling undermines the presumption of innocence and the related fairness of the factfinding process."  Id. at 2013.  Still, "[w]e do not

---

[2]The fact that the acts occurred during a criminal trial affects the maximum term of imprisonment available for the crime of injuring a federal officer.  See § 1503(a).

underestimate the need to restrain dangerous defendants to prevent courtroom attacks, or the need to give trial courts latitude in making individualized security decisions." Id. at 2014. It is thus within the discretion of the trial court to determine on an individual basis whether restraints "are justified by a state interest specific to a particular trial." Id. at 2012.

We review the district court's security decisions for an abuse of discretion to determine whether the district court's reasons for the extra security justified the potential for prejudice that the restraints impose. Hellum v. Warden, United States Penitentiary-Leavenworth, 28 F.3d 903, 907 (8th Cir. 1994). This determination requires balancing "the possibility of prejudice against the need to maintain order in the courtroom and custody over incarcerated persons." United States v. Stewart, 20 F.3d 911, 915 (8th Cir. 1994) (finding the district court justified in ordering restraints where, in addition to his overall disruptive behavior, the defendant was on trial for the courtroom assault of a witness in an unrelated matter).

Here, the district court ordered Mahasin restrained during the trial because of his recent conviction for attempted murder of a government witness, his recent assaults on both a deputy sheriff and a fellow inmate, his alleged courtroom assault on a federal prosecutor in a courtroom in the same district, and his threats to his own court-appointed attorney. The district court took efforts to obscure the jury's view of the restraints, and it was only upon Mahasin's voluntary disclosure that the jury learned of the restraints. Under these circumstances we find that the district court did not abuse its discretion in ordering Mahasin restrained during the trial.

Mahasin also argues that the district court erred in finding that he had waived his right to counsel. The Sixth Amendment guarantees a criminal defendant the right to counsel as well as the right to waive this right and act pro se in his or her own defense. United States v. Patterson, 140 F.3d 767, 774 (8th Cir. 1998) (citing Faretta v. California, 422 U.S. 806, 807 (1975)). Before allowing a criminal defendant to

proceed pro se, the court must determine that the defendant has made a "knowing, intelligent, and voluntary waiver of his Sixth Amendment right to counsel." Stewart, 20 F.3d at 917 (quoting United States v. Veltman, 9 F.3d 718, 720 (8th Cir. 1993) (internal citations and quotation marks omitted)). We review the district court's decision to allow Mahasin to represent himself de novo. Patterson, 140 F.3d at 774-75. "We will find a valid waiver if a district court adequately warn[ed] [the] defendant or if, on the record as a whole, we determine that the defendant knew and understood the disadvantages of self-representation." Stewart, 20 F.3d at 917. Here, Mahasin's decision to proceed pro se was knowing, intelligent, and voluntary.

Upon notice that Mahasin wished to represent himself, the court asked him a series of questions, including whether he had studied the law or represented himself before. Mahasin stated that he understood the crimes he was charged with and maximum penalties authorized if the jury found him guilty. Mahasin also stated that he understood that, if he was found guilty, the sentencing guidelines would affect his sentence, and that the rules of evidence governed what could be admitted during the trial. The court also warned Mahasin of the pitfalls of representing himself, stating that "[c]oming to court representing yourself is like going to a hatchet fight without a hatchet. . . . So, in other words, it's my opinion that a trained lawyer would defend you far better than you could defend yourself." (Trial Tr. Vol. I, at 19.) The court strongly urged Mahasin not to represent himself.

> THE COURT: Okay. Now, in light of what I've told you in terms of the penalties that you may suffer, that the Court's conclusion of your unfamiliarity with the law, evidence, and procedure as well as the fact that you may have a very difficult time getting on anything that you think you want to get on because of these procedural and evidentiary rules, is it still your desire to represent yourself and give up your right to a represented lawyer?
>
> THE DEFENDANT: Yes.

THE COURT: Now, is your decision voluntary, you made it on your own?

THE DEFENDANT: Yes, sir.

(Id. at 20.)

"Once the court was satisfied that [Mahasin's] decision was knowing and voluntary, it was constitutionally required to allow him to represent himself at trial." Patterson, 140 F.3d at 775. The court agreed to allow Mahasin to waive his right to counsel, but nonetheless appointed his original counsel as stand-by counsel and stated that it would allow the appointed attorney to take over during the trial if necessary. Mahasin's stand-by counsel actively participated in the proceedings. We find that Mahasin's Sixth Amendment rights were not violated and affirm the district court's grant of Mahasin's motion to waive his right to counsel.

Finally, Mahasin argues that 18 U.S.C. § 111 is unconstitutional. This argument is without merit. See United States v. Feola, 420 U.S. 671, 677 n.9 (1975) ("[W]here Congress seeks to protect the integrity of federal functions and the safety of federal officers, the interest is sufficient to warrant federal involvement.").

## CONCLUSION

For the above-stated reasons, we affirm Mahasin's conviction.

_____