# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1062

_____

| | | |
|---|---|---|
| Kenneth Dewayne Williams, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Larry Norris, Director, Arkansas | * | |
| Department of Correction, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: December 17, 2009
Filed: July 15, 2010

_____

Before RILEY, Chief Judge,[1] WOLLMAN, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Kenneth Dewayne Williams was convicted of capital murder and sentenced to death. The district court[2] denied his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We affirm.

_____

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

[2]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Missouri.

I.

In 1999, Williams was sentenced to life in prison for capital murder, attempted capital murder, kidnaping, aggravated robbery, theft, and arson. On September 15, 1999, Williams began serving his sentence at the Cummins Unit of the Arkansas Department of Correction. On October 3, 1999, Williams escaped from the prison by hiding in a garbage truck. He proceeded to the nearby residence of Cecil Boren, who was at home working in his garden. Williams shot Boren to death and dragged his body to a bayou. Williams stole Boren's firearms and truck and eluded police for one day. Williams was captured after a high-speed car chase that ended when the vehicle he was driving collided with a water truck, killing its driver.

In 2000, Williams was tried and convicted of the capital murder of Boren. In the penalty phase of the trial, the jury found four aggravating circumstances: (1) the murder was committed while Williams was unlawfully at liberty after a felony conviction; (2) Williams previously committed a violent felony; (3) Williams caused the death of more than one person during the criminal episode; and (4) Williams killed Boren for the purpose of evading capture. The jury found one mitigating circumstance: Williams had experienced inter-generational family dysfunction. The jury unanimously sentenced Williams to death.

Williams directly appealed his conviction and sentence to the Arkansas Supreme Court and was denied relief. Williams v. State, 67 S.W.3d 548 (Ark. 2002) (Williams I). Williams then petitioned for state post-conviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure. The circuit court denied relief, and the Arkansas Supreme Court affirmed. Williams v. State, 251 S.W.3d 290 (Ark. 2007) (Williams II).

In 2007, Williams filed a petition for habeas corpus under 28 U.S.C. § 2254. On October 31, 2008, the district court denied the petition. Williams v. Norris, No.

5:07cv00234, 2008 WL 4820559 (E.D. Ark. 2008). The district court granted Williams a certificate of appealability on the following questions: (1) whether Williams' rights were violated by the trial court's refusal to provide funds or admit presentation of a corrections expert; (2) whether the trial court improperly admitted certain victim impact evidence; (3) whether Williams received ineffective assistance of counsel for failure to object to an improperly biased juror; (4) whether Williams received ineffective assistance of counsel for failure to object to the jury's failure to consider mitigating evidence; (5) whether Williams received ineffective assistance of counsel for failure to introduce supporting documentation of mitigation evidence; (6) whether Williams' right to due process was violated by being tried in prison attire while shackled and accompanied by uniformed guards, and whether the Arkansas Supreme Court decided this under the wrong legal standard; and (7) whether the trial court erred in denying Williams funding to investigate claims of juror bias. D. Ct. Order of Jan. 5, 2009. We consider each issue in turn.

II.

We review *de novo* the district court's conclusions of law. McGehee v. Norris, 588 F.3d 1185, 1193 (8th Cir. 2009). The district court's findings of fact are reviewed for clear error. Id. On a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, if an issue was fully adjudicated on the merits by the state court, then we will not grant relief unless the decision of the state court was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," id. § 2254(d)(1), or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(2); Smith v. Spisak, 130 S. Ct. 676, 681 (2010); McGehee, 588 F.3d at 1193.

A.

Williams argues that the prison's failure to prevent his escape was a relevant mitigating factor in the penalty phase of his trial and that he was improperly denied funding for a corrections expert to testify regarding the prison's negligence. The trial court ruled that such testimony was not relevant as a mitigating factor and denied the requested funding.

The warden of the prison from which Williams escaped, Dale Reed, testified during the penalty phase of the trial. Warden Reed read from his report to the director of the Arkansas Department of Correction concerning the escape, and he detailed the failures of his staff that led to Williams' escape. J. App. at 446. Following a discussion of whether the prison negligently failed to place Williams in a maximum security facility, Williams' attorney questioned Warden Reed about the negligence of the prison and the guards on duty. Id. at 446-47. Warden Reed stated that two prison employees had negligently failed to do their required jobs and that the prison had failed in its duty to prevent Williams' escape. Id. at 450-51. Later in the penalty phase, Williams' psychologist, Dr. Mark Douglas Cunningham, testified at length about the difficulties Williams faced growing up, his exposure to violence and drugs, and his developmental disabilities. Id. at 469-517. Dr. Cunningham described the type of security facility that was appropriate for Williams to ensure that he did not harm others, id. at 515-16, and he succinctly stated Williams' theory of mitigation stemming from the prison's actions.

> Prosecutor: Dr. Cunningham, did I also hear you to say that it was the prison's fault that Mr. Boren is dead.
>
> Cunningham: I'm sorry. I said that but for the negligence of security, Mr. Boren would still be alive.

Prosecutor: Well, Doctor, isn't it true that if Kenneth Williams hadn't gotten in that slop tank and got out of those prison walls, snuck across those farmlands and through those ditches, crossed the highway at Grider's—Grinder's Switch and got over there to Mr. Cecil Boren's house and if he hadn't shot him seven times, Mr. Boren wouldn't be dead?

Cunningham: That's correct.

Id. at 526-27.  The jury's special verdict form listed two mitigating factors related to this theory: "The Arkansas Department of Correction was negligent to the community in classifying Kenneth D. Williams and allowing him to be placed in the medium security population of the Cummins Unit of ADC," and "The Arkansas Department of Correction was negligent in allowing Kenneth D. Williams to escape from the Cummins Unit."  Id. at 2030-33.

On direct appeal, the Arkansas Supreme Court rejected Williams' claim, cast as a violation of his right to due process under the Fourteenth Amendment as applied by Ake v. Oklahoma, 470 U.S. 68 (1985), concluding that the proposed evidence "cast no light on Williams' culpability.  It [did] not have any tendency to diminish responsibility.  It [was] not a mitigating circumstance.  It was inadmissible." Williams I, 67 S.W.3d at 563.  In his federal habeas petition, Williams reasserted his Fourteenth Amendment claim, adding to it the claim that the exclusion of testimony by a corrections expert was a violation of the Eighth Amendment as applied by Lockett v. Ohio, 438 U.S. 586 (1978).  The district court denied relief on both claims, ruling that the Eighth Amendment claim had been defaulted because it was not fairly presented to the state court, and that even if it had been preserved, the claim failed on the merits.  D. Ct. Op. at 7.

Williams argues that the trial court's exclusion of a corrections expert's testimony regarding the prison's negligence as a mitigating factor violated Williams' rights under the Eighth Amendment. A defendant has the right to present all relevant mitigating evidence during the penalty phase of a capital trial. Lockett, 438 U.S. at 604 (plurality opinion); see Skipper v. South Carolina, 476 U.S. 1 (1986), Eddings v. Oklahoma, 455 U.S. 104 (1982). As the Court wrote in Lockett, the Eighth and Fourteenth Amendments require the judge or jury "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." 438 U.S. at 604. The Court, however, did not disturb "the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." Id. at 604 n.12.

The Lockett jurisprudence requires the sentencer to consider a broad range of evidence, but relevance marks the outer limit of admissibility for purported mitigating evidence. United States v. Paul, 217 F.3d 989, 1000 (8th Cir. 2000) ("There is only a constitutional violation if there exists a reasonable likelihood that the jurors believed themselves precluded from considering relevant mitigating evidence."). Relevant mitigating evidence is "evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonable deem to have mitigating value." Tennard v. Dretke, 542 U.S. 274, 284 (2004); McGehee, 588 F.3d at 1195.

In this case, the trial court ruled that the testimony of a corrections expert was irrelevant; it "did not shed light" on Williams' character, record, or the circumstances of his offense, and thus could be excluded. See Simpson v. Norris, 490 F.3d 1029, 1033 (8th Cir. 2007) (upholding trial court's refusal to inform the jury about co-defendant's lesser sentence when it "did not shed light" on the defendant's "character, record or the circumstances of the offense"). As set forth above, the Arkansas Supreme Court affirmed the trial court's decision, stating, "Where the offered evidence of mitigation has nothing to do with a criminal's character, record,

background, condition, or the circumstances of the crime, it is not relevant on the issue of punishment." Williams I, 67 S.W.3d at 563. This decision was in accord with federal law and not erroneous. Williams, therefore, cannot claim relief based upon the Lockett line of cases. The Arkansas Supreme Court correctly applied federal law when it rejected this claim. See 28 U.S.C. § 2254(d)(1).

Even if there was error in denying this claim, it was harmless. We will review for harmless error a properly preserved claim that relevant evidence was improperly excluded. See McGehee, 588 F.3d. at 1197 (applying harming error analysis to Lockett claim); Sweet v. Delo, 125 F.3d 1144, 1158-59 (8th Cir. 1997) (same). As recounted above, Williams was able to introduce evidence about the prison's negligence in failing to prevent his escape. The warden testified regarding the negligence of the guards that led to Williams' escape, and a psychologist testified that Williams' actions were partly caused by the prison's negligence, going so far as to say that "but for" the prison's negligence, Boren would still be alive. J. App. at 526. Williams' counsel brought the issue of the prison's negligence to the jury's attention during closing statements, and his theory of mitigation was adequately developed at trial. Thus, the jury could have considered this evidence as a mitigating factor, despite the denial of funding for and the preclusion of testimony from a corrections expert. Given the nature of Williams' offenses, such additional evidence would not likely have affected the jury's sentence. Cf. McGehee, 588 F.3d at 1197-98 (collecting cases where exclusion of mitigating testimony resulted in prejudice).[3]

---

[3]Williams also argues that he had a due process right under the Fourteenth Amendment to funding for a corrections expert and that the trial court erred in denying him that funding under Ake v. Oklahoma, 470 U.S. 68 (1985). Under Ake, a defendant has a right to funding for psychiatric assistance when his mental state or future dangerousness is likely to be a significant factor in his defense. Id. at 86-87. A defendant's right to expert assistance is not limited to psychiatric experts or to when the defendant's mental state is an issue at trial. Little v. Armontrout, 835 F.2d 1240, 1244-45 (8th Cir. 1987) (en banc). In Little, we granted relief to a petitioner who claimed that the trial court erred in denying him funding to hire an expert on hypnosis.

B.

Williams argues that some of the victim impact testimony presented during the penalty phase violated the strictures of Payne v. Tennessee, 501 U.S. 808 (1991), and that his counsel's failure to object to the improper testimony constituted ineffective assistance within the meaning of Strickland v. Washington, 466 U.S. 668 (1984). Williams alleges that the resolution of this issue by the Arkansas Supreme Court was unreasonable both as to law and facts and that the justifications for denying relief on this issue were contradictory and invalid.

---

Id. at 1245. The only salient issue at trial was identification of the assailant, and the state had used hypnosis to "improve" the memory of its witnesses. Id. at 1242. Addressing whether Ake applied, we stated that there "is no principled way to distinguish between psychiatric and nonpsychiatric experts. The question in each case must be not what field of science or expert knowledge is involved, but rather how important the scientific issue is in the case, and how much help a defense expert could have given." Id. at 1243. Defendants in capital cases and non-capital cases are equally entitled to expert witnesses. Id.

To make out a violation of Ake, the defendant must show (1) that the expert would have aided his defense and (2) that the denial of expert assistance caused an unfair trial. Little, 835 F.2d at 1243; see United States v. Rodriguez, 581 F.3d 775, 789 (8th Cir. 2009), petition for cert. filed, __ U.S.L.W. __ (U.S. June 10, 2010) (No. 09-11360). Unlike the petitioner in Little, Williams cannot show either to be true. The issue of the prison's negligence in Williams' escape was uncontested and tangential. As the Arkansas Supreme Court stated, testimony from a corrections expert would have cast "no light on Williams's culpability," and had no tendency "to diminish Williams's responsibility." Williams I, 67 S.W.3d at 563. Funding for a corrections expert would not have aided Williams' defense, and the denial of these funds did not deprive Williams of a fair trial. Thus, the trial court's denial of expert assistance did not violate Ake.

During the penalty phase, a number of individuals testified about the impact of Boren's death on them. Annette Boren Knight, the victim's sister, testified in part that,

> The meeting of my brothers and sisters when we get together it'll never be the same. We ask ourselves what we can do in situations like this. Well, we can't do anything as a family but hold together and pray together. But you can do something. You are in a position to do that. What would you do if it was your brother or your sister or your baby that someone stole away from you. I can't do anything, but you can.

J. App. at 417. Williams' attorney objected to this testimony, stating,

> Once again, Judge, it's totally improper for her in victim impact to tell the jury what she wants them to do which is inferring she wants them to kill him. That's improper. Telling the jury that they are in a position to do something about this and she's not, that's improper. That is not the purpose of victim witness [statements], your Honor. You just give me a continuing objection [and] I'll sit down and shut up.

Id. at 417-18. The trial court then stated,

> I think, you know, when you get to the point of ask [sic] them to put themselves in somebody else's place we're getting pretty close. I'm going to give you a few minutes, and I'm going to let you get those written out statements and peruse them for content.

Id. at 418. Williams then moved for a mistrial, which the court denied. Id. at 419.

Williams argued on direct appeal that admission of Knight's testimony violated his right to due process under the Fourteenth Amendment. The Arkansas Supreme Court dismissed the claim, ruling that Williams had failed to properly object to the testimony. Williams I, 67 S.W.3d at 563. The court stated, "Williams asserts he had

a continuing objection to this type of testimony; however, the record reveals no such objection. This court will not consider arguments on appeal in the absence of a specific, contemporaneous objection at trial." Id. In his Rule 37 post-conviction proceedings, Williams renewed this argument, adding that if he had failed to object properly at trial, then it was due to ineffective assistance of counsel. Williams II, 251 S.W.3d at 294. The Arkansas Supreme Court again denied relief, ruling that Knight's statement did not impermissibly tell the jury to sentence Williams to death. Id. The court wrote, "we do not believe that Ms. Knight's testimony was objectionable, as it did not specifically instruct the jury on what she thought it should do. Rather, Ms. Knight only acknowledged the family's helplessness and the jury's power to make a decision regarding Williams's punishment for the crimes he committed." Id.

Williams reasserted this claim in his federal habeas petition, arguing that Knight's statement violated the Eighth Amendment as applied by Booth v. Maryland, 482 U.S. 512 (1987), and Payne v. Tennessee, 501 U.S. 831 (1991), and the Fourteenth Amendment as applied by Hicks v. Oklahoma, 447 U.S. 343 (1980). In addition, Williams renewed his argument that if he had not objected properly, it was due to ineffective assistance of counsel and should not be held against him. The district court ruled that the Eighth Amendment claim was not properly presented to the state court because the objection was not properly made under state law. D. Ct. Op. at 15. The district court determined that Knight's testimony was not equivalent to a call for a death sentence, was not unconstitutional under Payne and Booth, and was not likely to have played a substantial role in the jury's decision-making. Id. at 16. The district court concluded that even if the testimony was improper, it was harmless. Id. at 17. On appeal, Williams restates the claims made in his habeas petition, and argues that the statement was improper because any juror would have known that Knight meant to call for a death sentence.

Our consideration of this issue is guided by Booth, 482 U.S. 512, as modified by Payne, 501 U.S. 831. In Booth, the Court considered the propriety of victim

impact statements that spoke to the emotional trauma suffered by the victim's family, the personal characteristics of the victim, the nature of the crime and the appropriate sentence. 482 U.S. at 503-09. The victims' son testified that his parents were "butchered like animals," and that he thought that no one "should be able to do something like that and get away with it." Id. at 512. The victims' daughter testified that she did not "feel that the people who did this could be rehabilitated" and she did not "want them to do this again or put another family through this." Id. at 513. Ruling broadly, the Court held that it was improper to admit a victim impact statement during the sentencing phase of a capital trial. Id. at 509. The Court rejected the notion that distress to the victim's family or the victim's personal characteristics were appropriate sentencing considerations in a capital case. Id. at 507. The Court also rejected the admission of opinions from the family of the victim about the character of the crimes. Id. at 508. The Court reasoned that the presentation of this information could have "no other purpose than to inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant." Id.

In Payne, the Court considered victim impact testimony by the victim's mother, who testified that her grandson "misses his mother and baby sister." 501 U.S. at 826. None of the testimony presented "related to the circumstances of [the defendant's] brutal crimes." Id. The Court overruled Booth to the extent that it excluded "evidence and argument relating to the victim and the impact of the victim's death on the victim's family." Id. at 830 n.2. The Court reasoned that statements about the impact of the crime were a legitimate way "of informing the sentencing authority about the specific harm caused by the crime in question." Id. at 825. The Court, however, left intact the prohibition against statements about "the crime, the defendant, and the appropriate sentence"; such statements violated the Eighth Amendment and were inadmissible. Id. at 830 n.2; see Payne, 501 U.S. at 833 (O'Connor, J., concurring) (stating that Payne did not reach the "issue of opinions of the victim's family, the defendant, and the appropriate sentence"). The Court also stated that if evidence was introduced that was "so unduly prejudicial" that it rendered "the trial fundamentally

-11-

unfair," then the due process clause of the Fourteenth Amendment could provide relief. Id. at 825.[4]

The question is whether Knight's statement was equivalent to an impermissible suggestion about an appropriate sentence. See id. at 830 n.2. The only issue to be determined during the penalty phase was whether Williams would receive a death sentence or life imprisonment without the chance of parole. The jury could have unanimously agreed to a death sentence or life imprisonment without parole. If the jury failed to act, meaning it could not unanimously agree on the appropriate sentence, then the judge would automatically impose life without parole. Thus, there were two

---

[4]Since Payne, we have been hesitant to grant relief on the grounds of an improper victim impact statement. See Nooner v. Norris, 402 F.3d 801, 808 (8th Cir. 2005) (denying relief when the evidence was similar to what was admitted in Payne: "a family member of the victim explaining to the jury the impact the murder has had on the victim's family"); United States v. Nelson, 347 F.3d 701, 714 (8th Cir. 2003) (denying relief when victim impact testimony was "not meaningfully different than that allowed in Payne"); Simmons v. Bowersox, 235 F.3d 1124, 1135 (8th Cir. 2001) (same); see also Bucklew v. Luebbers, 436 F.3d 1010, 1022 (8th Cir. 2006) (denying relief when victim's mother testified, but did not opine on appropriate sentence). We have denied relief when the witnesses included co-workers and other associates of the victims who testified about the impact that the crime had on their lives. Rodriguez, 581 F.3d at 797; United States v. Paul, 217 F.3d 989, 1002 (8th Cir. 2000) (same); see also United States v. Johnson, 495 F.3d 951, 977 (8th Cir. 2007) (denying relief when victim's brother read a poem written by one of the victim's childhood friends, and the poem "conveyed the devastation and loss felt" by the victim's brother and the poem's author). We denied relief in Gray v. Bowersox when the victim impact testimony included statements about the victim's politics, civic activities, and involvement in the community. 281 F.3d 749, 755 (8th Cir. 2002). We have not found the quantity of victim impact statements to be determinative to our analysis. United States v. Bolden, 545 F.3d 609, 626-27 (8th Cir. 2008), cert. denied, 130 S. Ct. 796 (2009) (sixteen witnesses); United States v. Allen, 247 F.3d 741, 779 (8th Cir. 2001) (eleven witnesses), judgment vacated on other grounds by Allen v. United States, 536 U.S. 953 (2002). For our court's most recent discussion of Payne, see Storey v. Roper, 603 F.3d 507 (8th Cir. 2010).

possible outcomes of this phase, but only the death sentence required a unanimous vote of the jury.

Knight emphasized in her testimony that the jury could "do something," and that the jury was "in a position to" act.[5] Knight's testimony did more than express despair and contrast her position to that of the jury's in an effort to emote hopelessness. She did not merely ask for justice to be served, instead she requested future action. Insofar as she suggested that the jury act affirmatively and impose a death sentence, Knight's testimony violated Payne's proscription against suggesting the appropriate sentence. Payne, 501 U.S. at 830 n.2. The permissible purpose of victim impact statements is to inform the sentencer of "the specific harm caused by the defendant." Id. at 825. The locus of this testimony is the "specific harm" that was done, as evidenced by testimony concerning "the victim and the impact of the murder on the victim's family." Id. at 826-27. Statements concerning the crime, the defendant, or the appropriate sentence are improper for the reasons articulated in Booth. Id. at 830 n.2. Payne makes no provision for statements about the jury's ability to act, implying what sentence it should impose, or for any other pleading to the jury. Id. As the trial court stated, Knight's statements were "getting pretty close" to the edge of Payne, J. App. at 418, and they may have been impermissible.

Any violation of Payne would not necessarily entitle Williams to relief. Errors in admission of victim impact statements are trial errors that may be harmless when considered in context. Rodriguez, 581 F.3d at 797 (applying harmless error analysis

---

[5]The state seeks to analogize these comments to what was permitted in Payne, stating, "the testimony is no different in substance than the very comments approved of in Payne that told the jury that the surviving victim in that case was one day 'going to want to know what type of justice was done' in response to the brutal murder of his mother and sister and that '[w]ith [its] verdict, [the jury would] provide the answer' to him." Appellee's Br. 18. These comments, however, were remarks made by the prosecutor, not a victim impact statement, and thus are inapposite. Payne, 501 U.S. at 815.

to effect of victim impact statement). To grant relief on a claim of an improper victim impact statement, we must be convinced that the statements were so unduly prejudicial "as to render the trial fundamentally unfair." Bolden, 545 F.3d at 627 (quoting Payne, 501 U.S. at 831).

We conclude that Knight's testimony did not render Williams' trial fundamentally unfair. Williams was convicted of a capital murder that occurred after he escaped from prison where he was imprisoned for another capital murder. During his escape attempt, he was involved in a car crash that killed another person. Thus, he willfully killed two people on two separate occasions and recklessly caused the death of a third person during his escape attempt. Multiple aggravating factors were found at sentencing, and the mitigating evidence was minimal. Williams cannot show that there was a reasonable probability that the testimony affected the sentence, and that absent the testimony, the sentence would have been different. Skillicorn v. Luebbers, 475 F.3d 965, 972 (8th Cir. 2007) (articulating the standard for fundamental unfairness). The admission of Knight's testimony was "not so unfairly prejudicial as to infect the sentencing proceeding and render it fundamentally unfair." Storey, 603 F.3d at 518, 521. The Arkansas Supreme Court's resolution of this issue was a reasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1).

Because it has been resolved on the merits, we need not consider whether Williams' objection to Knight's testimony was timely or whether counsel was ineffective for failing to object.[6] 28 U.S.C. § 2254(b)(2); see McKinnon v. Lockhart, 921 F.2d 830, 833 n.7 (1990) (per curiam) (stating that it may be more efficient to resolve habeas issues on the merits rather than on the grounds of procedural default); see also Gray, 281 F.3d at 756 n.3 (ineffective assistance of counsel claim cannot succeed when "underlying objection would have been without merit").

_____

[6]Williams also argues that Hicks v. Oklahoma, 447 U.S. 343 (1980), and Brown v. Sanders, 546 U.S. 212 (2006), entitle him to relief on this claim. We have considered these arguments and find them without merit.

-14-

C.

Williams argues that one juror, LaRhonda Washington, was impermissibly biased in favor of the death penalty. During voir dire, the prosecutor sought to determine if Washington was impermissibly biased either on the question of guilt or the sentence.

Prosecutor: After you determine the aggravating circumstances outweigh the mitigators, then you decide whether to impose life without parole or the death penalty. Under those circumstances, Ms. Washington, could you impose the death penalty? If you were to find him –

Washington: Yes, I could.

Prosecutor: Could you also consider life without parole, Ms. Washington? Or would you – or would you – do you think that death is the only appropriate punishment at that time?

Washington: Yes, I do.

Prosecutor: You – okay. You do what?

Washington: Think death would be the –

Prosecutor: You think death is the only appropriate punishment at that time?

Washington: Yes.

Prosecutor: You could not consider the death – you could not consider life without parole?

Washington: (No response)

Prosecutor: There's no right or wrong answer, Ms. Washington. It's a tough question.

Washington: Yes, it is.

Prosecutor: I mean – and we're talking about it somewhat quickly and that makes it think [sic] like its maybe not as serious as it really is. It's very serious and so don't let me rush you into an answer.

Washington: Possibly weighing, I probably could. You know – go with life without parole maybe –

Prosecutor: Okay. But you lean toward the death penalty, I can tell?

Washington: Yes, sir.

J. App. at 313-14 (dialogue with potential juror Hutchins omitted). A colloquy followed on why Washington had indicated on the juror selection form that she had already developed an opinion that the defendant was guilty. Id. at 317-18. In response to Williams' attorney's questions, Washington stated that she could begin the trial with a presumption of innocence. Id. at 326. On the question of the appropriate sentence, Washington gave the following answers.

Williams' Attorney: What is your feeling about the death penalty, Ms. Washington?

Washington: I – like I said before, I felt that – I feel very strong about it and I feel that if you can do the crime you can pay the time. That's the way I feel about it. I mean, no, I – I mean, from the circumstance of what be the cause of the reason, yes, sir, I'm for it. I mean – yes, I'm for the death penalty.

. . . .

Williams' Attorney: What purpose do you think the death penalty serves?

Washington: Well, I feel that when any life has been taken for no apparent reason you know, I mean, no it's not no purpose to be served, but those people could have had the chance to live also back when someone else commit this crime toward them. So – I feel like if you can – you can take someone else's life and – like that then.

. . . .

Williams' Attorney: Are you saying that if you are convinced that a person committed murder, the death penalty would be the sentence that you would favor in those circumstances?

Washington: No. Maybe not every case – maybe the way of the outcome of it. Not for every case.

. . . .

Williams' Attorney: Would you be willing to consider life without parole or would you be favoring the death penalty if you felt like someone's life has been taken without any reason?

Washington: Maybe.

Williams' Attorney: I'm sorry?

Washington: Maybe I could, yes.

Id. at 326-29. On re-examination by the prosecutor, Washington stated that she could put aside her opinions as to the guilt of the defendant and make a decision solely on the evidence presented at trial. Id. at 339. Williams' attorney then stated that he would have struck Washington if he had any remaining peremptory strikes. Id. at 340. The court noted counsel's statement and then empaneled Washington. Id.

-17-

On direct appeal, the Arkansas Supreme Court stated, "To challenge a juror on appeal, appellant must show he exhausted his peremptory challenges and was forced to accept a juror who should have been excused for cause." Williams I, 67 S.W.3d at 560. Williams' counsel did not move to excuse Washington for cause. Accordingly, the court ruled that it would not consider this claim because it had not been preserved for appeal. Id. In his Rule 37 post-conviction proceedings, Williams alleged that his counsel was ineffective for failing to strike Washington for cause. The Arkansas Supreme Court rejected this claim, determining that Washington was not impermissibly biased and that Williams had demonstrated neither error nor prejudice. Williams II, 251 S.W.3d at 296. The district court found this claim to be without merit, stating that the state court's determination was reasonable and entitled to a presumption of correctness. D. Ct. Op. at 21.

Williams argues that his counsel was ineffective under Strickland for failing to strike Washington for cause. Williams argues that application of Morgan v. Illinois, 504 U.S. 719 (1992), required exclusion of Washington from the jury because she was not impartial, and that the failure to remove her could not have been harmless under Mills v. Maryland, 486 U.S. 367 (1988).

To prevail on a Strickland claim, a defendant must show that his counsel was deficient and that the deficient performance prejudiced the defense. 466 U.S. at 687. To establish deficient performance, the defendant must show that his counsel acted unreasonably under prevailing professional norms. Id. at 688. To establish prejudice, the defendant must show that his counsel's failings deprived him of a fair trial. Id. at 687. Whether a juror is biased against the defendant is a question of fact, and we will defer to the state court's finding "if it is fairly supported by the record." Mack v. Caspari, 92 F.3d 637, 642 (8th Cir. 1996); Cannon v. Lockhart, 850 F.2d 437, 441 (8th Cir. 1988); see United States v. Tucker, 243 F.3d 499, 506 (8th Cir. 2001). A demonstration of actual bias requires an impermissible affirmative statement; an "equivocal" statement is insufficient. See Mack, 92 F.3d at 642. Specific to this

claim, Williams must show that Washington was impermissibly biased against him, that his counsel was deficient in failing to strike her for cause, and that inclusion of her on the jury resulted in an unfair trial.

As recounted above, Washington, although initially hesitant, stated that she could weigh the facts in this case, that she could consider mitigating factors, and that the death penalty was not appropriate in every case. The Arkansas Supreme Court determined that Washington was not impermissibly biased, and this finding is entitled to a presumption of correctness. See Greene v. Georgia, 519 U.S. 145, 146 (1996) (per curiam); Mack, 92 F.3d at 641; Cannon, 850 F.2d at 440. The Arkansas Supreme Court's ruling that Washington was not impermissibly biased is fairly supported by the record and not clearly in error. Williams' Strickland claim cannot succeed because he cannot show that Washington was impermissibly biased, that his counsel's failure to object to Washington was deficient performance, or that empaneling Washington deprived him of a fair trial.[7]

D.

Williams argues that his counsel was ineffective under Strickland for not objecting to the jury's failure to make certain findings concerning mitigating circumstances. The jury indicated on the mitigating evidence forms only that it had found evidence of "family dysfunction which extended from generation to

---

[7]Williams contends that because Mills emphasizes that each juror is of particular importance when unanimity is required to impose a death sentence, 486 U.S. at 384, the presence of Washington on the jury could not have been harmless. The Arkansas Supreme Court's decision, however, was not based upon review for harmless error, as Williams suggests. Appellant's Br. 30-31. Rather, the Arkansas Supreme Court denied relief because the factual basis for the lower court's decision was not clearly erroneous, and it affirmed the circuit court "on this point." Williams II, 251 S.W.3d at 296.

-19-

generation."[8] J. App. at 2032. The jury did not find evidence of any other mitigating circumstance even though evidence had been introduced on all of the other circumstances listed on the special verdict form. Id. at 2031-33. Williams contends that the jury did not weigh the mitigating circumstances against the aggravating factors. He argues that it ignored the evidence of mitigating circumstances in violation of the Eighth Amendment, as applied by Penry v. Johnson, 532 U.S. 782 (2001), and Mills v. Maryland, 486 U.S. 367 (1988).

On direct appeal, the Arkansas Supreme Court denied relief on this claim, stating that it was "the jury's decision as to what weight to give evidence." Williams I, 67 S.W.3d at 562. On appeal from the denial of Rule 37 relief, the Arkansas Supreme Court affirmed, stating, "[t]he mere fact that evidence is presented by trial counsel that an issue constitutes a mitigator does not mean that the jury is required to conclude that it is." Williams II, 251 S.W.3d at 298. The district court also rejected this claim, ruling that the Arkansas Supreme Court's decisions were consistent and reasonable applications of existing federal law and that if there was error, it was harmless. D. Ct. Op. at 24. The district court ruled that Williams' Strickland claim failed because he could show neither deficient performance nor prejudice. Id. To prevail on his Strickland claim here, Williams must show that the jury's actions were in error, that counsel's failure to object was deficient, and that it resulted in an unfair trial. 466 U.S. at 687.

Penry and Mills involved juries that were precluded from properly considering mitigating circumstances because of misleading jury instruction forms. Penry, 532 U.S. at 797-99; Mills, 486 U.S. at 377-79. Neither case stands for the principle that Williams articulates—namely, that jury error in completion of properly worded

_____

[8]Williams incorrectly claims that the jury did not find any mitigating circumstance. The trial court initially thought the jury had not found any mitigating circumstances, but the jury foreperson clarified that one mitigating circumstance had been found: inter-generational family dysfunction. J. App. at 588-89.

special verdict forms is a *per se* violation of the Eighth Amendment. There is no evidence that the jury was precluded from considering mitigating circumstances or that it was mistaken about its ability to do so. The Arkansas Supreme Court's decision was thus in accord with clearly established law and reasonable.

Even if there was error in filling out the form, the error was harmless in light of the countervailing aggravating factors described above. See Baze v. Parker, 371 F.3d 310, 327-28 (6th Cir. 2004) (applying harmless error analysis to issue concerning incorrect jury form). The jury found four aggravating circumstances and only one mitigating circumstance. It is not likely that Williams' sentence would have been any different had the jury filled out the verdict forms differently. Williams cannot succeed on this Strickland claim because he cannot show that the jury's actions were in error or that his counsel's performance was deficient or prejudicial.

E.

Williams argues that his counsel was ineffective under Strickland because he failed to introduce documentation supporting his mitigation claims. Although counsel put an expert, Dr. Cunningham, on the stand to testify about Williams' difficult childhood and mental challenges, counsel did not introduce documents into evidence supporting these claims. Williams alleges that introduction of these documents could have made the claims more plausible to the jury and increased the chance that the jury would find mitigating circumstances. He invokes Wiggins v. Smith, 539 U.S. 510 (2003), and Skipper v. South Carolina, 476 U.S. 1 (1986), in support of this claim. To prevail on this Strickland claim, Williams must show that his counsel was deficient in not providing documentation for the mitigation claims and that this omission resulted in an unfair trial. 466 U.S. at 687.

Wiggins and Skipper dealt with the exclusion of and the failure to introduce certain kinds of evidence and whether prejudice results therefrom; they do not speak

-21-

to whether documentary evidence should have been provided to the jury. As the district court determined, there is no case law or statutory basis for Williams' claim, and thus it must be rejected. In any event, any error in failing to provide documentation would have been harmless. Williams' counsel conducted a thorough investigation of Williams' childhood, introduced extensive testimony by Dr. Cunningham, and supplemented this testimony with a video and slide presentation. Counsel strategically decided not to ask the jury to sift through all of the supporting documentation. There is no reason to believe that the jury's sentence would have been any different had all of the documents been introduced. The state court correctly applied existing law at sentencing, and the Arkansas Supreme Court did not err in denying relief, as its decision was consistent with clearly established federal law. See 28 U.S.C. § 2254(d)(1). Williams can show neither deficient performance nor prejudice, and thus his Strickland claim is without merit.

F.

Williams argues that the trial court violated his right to due process by forcing him to wear prison attire, shackles, and a stun belt during trial. In addition, Williams argues that he was prejudiced by the presence of uniformed guards standing and sitting near him. Williams objected to this at trial, and was overruled by the trial court. Williams argued this claim on direct appeal, and the Arkansas Supreme Court rejected it. Williams I, 67 S.W.3d. at 558-60. In his post-conviction proceedings, Williams again raised this claim, with the additional argument that he had been denied relief under an erroneous legal standard. Williams II, 251 S.W.3d at 299-300. Insofar as the issue of the proper standard had not been raised below, Williams pled ineffective assistance of counsel. Id. The Arkansas Supreme Court again denied his claim for relief. Id. Williams pled this claim in his habeas petition, and the district court likewise denied relief. D. Ct. Op. at 27.

During pre-trial proceedings, the court heard testimony about Williams' behavior during his prior trial for capital murder and attempted murder. Lieutenant Charles Inman, who had worked for the Jefferson County Sheriff's office and had provided courtroom security during Williams' prior trial, testified that Williams had taunted the victims' families during the trial in a deliberate effort to provoke them. J. App. at 284, 286-87. When the sentence was pronounced and Williams was led out of the courtroom, he laughed at the victims' families, and said something along the lines of, "[y]ou didn't kill me this time." Id. at 284. The victims' families reacted strongly, and a row ensued in the courtroom, during which courtroom security officers had to physically restrain Williams. Id. Williams was then transported from the courthouse to the Diagnostic Unit of the Department of Correction; during this trip Williams tried to break out of the window of the police car while it was traveling at sixty-five miles per hour. Id. at 285.

In reaching its decision on Williams' objection, the trial court discussed at length the issues involved. Id. at 301-05. The court determined that prison attire would have no prejudicial effect because Williams was going to be tried for a murder that occurred in the course of an escape from prison; the jury would by necessity be aware of his incarceration. Id. at 302. The court discussed the security issues involved, the risks that Williams presented, and his right to a fair trial. Id. at 303-04. Given Williams' prior behavior, the court felt that additional restraints were justified. The court sought to minimize the visibility of the restraints to the jury and to maximize Williams' ability to communicate with his lawyers. Id. at 304. Accordingly, the court ordered that Williams be seated in the courtroom before the jury entered to ensure that the jury would not see Williams "shuffle in and out" because of his leg restraints and that the stun belt be placed under his clothing and thus not visible to the jury. Id. Moreover, the court denied the imposition of mittens designed to prevent Williams from compromising the locks on his restraints because they would have interfered with Williams' ability to write notes to his lawyers. Id.

Williams' objection to his prison attire is without merit given that he was tried for a murder committed during a prison escape. Generally, prison attire is inherently prejudicial, because it puts the jury on notice that the defendant has already been deprived of his liberty. United States v. Stewart, 20 F.3d 911, 916 (8th Cir. 1994) (citing Estelle v. Williams, 425 U.S. 501, 503-07 (1976)). Prejudice, however, occurs only when prison attire puts the jury on notice of something that it does not already know. Id. Williams was accused of murdering Boren while escaping from prison; neither his current incarceration nor his escape was at issue; there was no way that the jury could avoid the fact that he was deprived of his liberty at the time of trial and at the time of the alleged offense. Thus, Williams suffered no prejudice by being clad in prison attire during his trial. The Arkansas Supreme Court's consideration of this issue was in accord with federal law and reasonable.

There is no question whether the trial court was justified in allowing restraints and the posting of guards during Williams' trial. Consequently, rather than contesting the justification directly, Williams argues that the Arkansas Supreme Court considered this issue on direct appeal under the wrong legal standard, erroneously placing the burden on Williams to prove prejudice. Williams argues that the Court's decision in Deck v. Missouri, 544 U.S. 622 (2005), required the state to prove beyond a reasonable doubt that shackling was necessary and that the state did not do so in violation of his constitutional rights. In denying this claim, the district court determined that Deck did not apply and that the decision of the Arkansas Supreme Court was in accord with clearly established precedent. D. Ct. Op. at 27. Like the district court, we reject this claim on multiple grounds.

First, Williams cannot claim any relief from Deck, because Deck post-dated his trial and the principles articulated therein were not clearly established at that time. 28 U.S.C. § 2254(d)(1). Second, even if Deck applied to this case, it would not provide an avenue for relief. In Deck, the Court considered "whether shackling a convicted offender during the penalty phase of a capital case" violates the Constitution. 544

U.S. at 624. The Court noted that routine shackling during the guilt phase of a trial has long been forbidden because it undermines the presumption of innocence, interferes with the defendant's ability to communicate with his lawyer, and affronts the dignity and decorum of judicial proceedings. Id. 630-32. Nevertheless, the Court recognized that there will be special cases in which these "perils" are unavoidable, noting, "[w]e do not underestimate the need to restrain dangerous defendants to prevent courtroom attacks, or the need to give trial courts latitude in making individualized security determinations." Id. at 632. The concerns about shackling during the guilt phase apply "with like force" to the penalty phase of a capital case. Id. Accordingly, courts may not routinely place defendants in shackles visible to the jury during the penalty phase of a capital case. Id. at 633. This prohibition, however, "is not absolute," and a judge can exercise his discretion when "special circumstances, including security concerns" call for shackling during the penalty phase of a capital case. Id.; United States v. Mahasin, 442 F.3d 687, 691 (8th Cir. 2006). When a court makes such a determination, the determination must reflect "particular concerns" related to the "special security needs or escape risks" of the defendant on trial. Deck, 544 U.S. at 633; Mahasin, 442 F.3d at 691.

The trial court engaged in a careful analysis in determining the appropriate security protocol in light of Williams' past behavior. The court's decision was based upon the special circumstances and security concerns present in the case, and the restraints that were utilized reflected the particular risks that Williams presented, which were substantial. As the Arkansas Supreme Court noted, "[i]t would be difficult to imagine a criminal defendant that would better fit the definition of a high-risk defendant." Williams I, 67 S.W.3d at 560. The trial court engaged in precisely the type of particularized inquiry that Deck requires, and this was not a case of shackling ordered "without adequate justification." 544 U.S. at 635. Thus, the relief that Deck provides, namely, that "the defendant need not demonstrate actual prejudice to make out a due process violation," does not apply in this case. Id. The Arkansas Supreme Court, therefore, resolved this issue correctly on Williams' direct appeal,

-25-

finding that Williams could not meet his burden to prove prejudice. Williams I, 67 S.W.3d at 560. As the Arkansas Supreme Court stated in Williams II, "[t]he standard announced in Deck, which places the burden of proving a lack of prejudice to the defendant on the State, only pertains where there is no adequate justification for a defendant wearing shackles during his trial." 251 S.W.3d at 300. Deck, therefore, does not provide any relief.[9] The Arkansas Supreme Court's consideration of this issue was in accord with clearly established federal law and provides no grounds for relief. See 28 U.S.C. § 2254(d).

## G.

Williams argues that he was entitled to funds to investigate juror bias and misconduct. Although he has no evidence to suggest this, he suspects that some jurors may have had unrevealed connections to the prison at which the victim, Boren, worked, and that they misled the court during voir dire. Williams argues that the Arkansas Supreme Court misapplied Williams v. Taylor, 529 U.S. 420 (2000) (Taylor), when dismissing this claim. Williams II, 251 S.W.3d at 300-03. The district court noted that Williams had no authority for this claim and ruled that it was without merit. D. Ct. Op. at 28-29.

---

[9]Williams, for the first time, claims on this appeal that even if shackling was proper during the guilt phase of the trial, it was not proper under Deck during the penalty phase, given that he "behaved impeccably" during the guilt phase. Appellant's Br. 43-44. This claim was not presented to the trial court, and thus is defaulted. Moore-El v. Luebbers, 446 F.3d 890, 896 (8th Cir. 2006). Moreover, Deck was not clearly established at the time of trial, and thus does not provide a basis for relief. 28 U.S.C. § 2254(d). But even considered on the merits, the claim fails because Deck, as discussed above, does not apply when a court with "adequate justification" acts within its discretion and orders the defendant restrained. 544 U.S. at 635.

Taylor, in contrast to this case, concerned a petitioner who had evidence that the jury foreperson had misled the court about her ties to the prosecution's "lead-off witness" and one of the prosecutors. Id. at 440-41. In light of the evidence, the Court ruled that 28 U.S.C. § 2254(e)(2) did not prevent the petitioner from developing his claim of juror misconduct in federal court. Id. at 443. The Court's ruling in Taylor, however, does not provide Williams with relief, for the Court specifically precluded this type of claim when it wrote, "[w]e do not suggest the State has an obligation to pay for investigation of as yet undeveloped claims." 529 U.S. at 443. Thus, Williams had no right to funding for an investigation to develop entirely speculative claims. Id.

III.

The judgment is affirmed.

_____