# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1956
_____

United States of America

*Plaintiff - Appellee*

v.

Moreion Lindsey

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: April 17, 2026
Filed: June 17, 2026
_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

A jury convicted Appellant Moreion Lindsey of conspiracy to commit murder for hire, in violation of 18 U.S.C. §§ 1958(a) and 2, and murder for hire, in violation of 18 U.S.C. § 1958(a). The district court[1] sentenced Lindsey to two concurrent life sentences based on these convictions. Lindsey appeals, contending that he is entitled

_____

[1]The Honorable Matthew T. Schelp, United States District Judge for the Eastern District of Missouri.

to a new trial because the district court failed to make adequate findings before ordering him placed in leg restraints during his trial. Having jurisdiction under 28 U.S.C. § 1291, we affirm the judgment of the district court.

I.

Ray Bradley, a member of a drug-trafficking organization, arranged for his nephew, Titus Armstead, to set up a stash house in New Jersey to hold drugs and drug proceeds. Armstead did so. But shortly later, he claimed that the stash house had been robbed. This incident proved costly to the drug-trafficking organization: the purported robbers made off with millions' worth in cocaine and cash.

Bradley suspected that the robbery was an inside job and that Armstead was behind it. So he recruited a man named Jerome Williams to have Armstead killed. Williams in turn recruited Lindsey, whom he paid $15,000 to murder Armstead. Bradley arranged for Armstead to travel to St. Louis, Missouri, where Lindsey picked Armstead up, drove him to a park, and shot him to death. Lindsey took a live photograph of Armstead's body with a camera on a cell phone—later recovered by investigators—to document the deed.

A federal grand jury indicted Lindsey for conspiracy to commit murder for hire and for murder for hire. Before trial, the Government filed a motion requesting that the district court "impose leg restraints on Defendant that are not visible to the jury due to specific safety concerns." In support of its request, the Government pointed to Lindsey's criminal history. That history included a 2008 conviction for Assault in the First Degree and Armed Criminal Action, for which Lindsey was sentenced to ten years' imprisonment, and a 2017 conviction for unlawfully possessing a firearm, for which Lindsey was sentenced to 30 months' imprisonment. The Government also emphasized the violent nature of, and mandatory life-sentence penalty associated with, Lindsey's underlying murder-for-hire offense.

At the final pretrial conference, Lindsey contended that restraints were unnecessary. His counsel stated, "Judge, I don't think there's a need for leg shackles in this instance. And if there's any misbehavior, I'm sure that you and the marshals will take care of [it]." At that point, the district court seemed to agree with Lindsey. It told the parties that it was "deny[ing]" the Government's motion "without prejudice . . . subject to, one, . . . talking with the marshals, . . . and two, obviously if something goes down that . . . changes the dynamic." The district court also stated that if it did order Lindsey restrained, it would "obviously do it in a way with the curtain [to] keep it hidden from the jury the best that [it] c[ould]."

On the first day of trial, the marshals brought Lindsey into the courtroom in leg shackles. Out of the jury's presence, the district court informed the parties that Lindsey would "have to wear" these restraints, and "[t]hat was decided by the marshals." The district court then asked if the parties wanted to make a record on the issue. Lindsey's counsel asked that the district court take care to prevent the jury from becoming aware of the restraints; he also confirmed that there was "a screen" and "everything" in place. He further stated that he "really d[id]n't care" about the restraints issue, even though it was his understanding that "there's no information of any great risk with Mr. Lindsey in particular." The district court said, "I mean, I can go through the whole thing with you, but . . . there's some risk with him, the nature of the offense, his history. But also, . . . we're going to a more uniform approach in the whole courthouse. So that's the issue." While Lindsey's counsel asked the district court if it had learned any new information bearing on the restraints issue, he did not request that the district court make any additional findings in support of its decision to order Lindsey restrained.

The jury convicted Lindsey on both the conspiracy to commit murder for hire and substantive murder for hire counts, and the district court sentenced Lindsey to two concurrent life sentences. Lindsey appeals. He argues that the district court erred by ordering him restrained without making adequate findings in support of that decision. According to Lindsey, this error entitles him to a new trial. In the

alternative, he asks that we remand this case to the district court with instructions to make additional findings as to whether restraints were justified.

## II.

Ordinarily, we review a district court's security decisions—including decisions to order criminal defendants restrained—for abuse of discretion. United States v. Mahasin, 442 F.3d 687, 691 (8th Cir. 2006). This analysis "requires balancing 'the possibility of prejudice against the need to maintain order in the courtroom and custody over incarcerated persons.'" Id. (citation omitted). As Lindsey acknowledges, we "ha[ve] never overturned a shackling order."

At the outset, we observe that Lindsey's core abuse-of-discretion argument is that the district court did not make a record adequately justifying its restraints decision. But Lindsey is responsible for the record he now challenges. It is unsurprising that the district court did not make a more extensive record on an issue Lindsey's counsel said he "really d[id]n't care about" and when Lindsey's counsel did not take the district court up on its express invitation to "go through the whole thing with you"—i.e., provide the very detail that Lindsey states is lacking.

The Government argues that these facts implicate waiver. See United States v. Olano, 507 U.S. 725, 733 (1993) (recognizing that waiver occurs when a party voluntarily relinquishes a known right). We are also skeptical that Lindsey preserved any objection to the district court's restraints decision because he failed to put the district court on notice that there was any live dispute as to its decision to restrain Lindsey and because Lindsey never clearly objected to the level of detail in the district court's findings. See United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005) (en banc) ("To preserve an error for appellate review, an objection must be timely and must 'clearly stat[e] the grounds for the objection.'" (alteration in original) (citation omitted)).

But even if we assume that Lindsey did not waive, and properly preserved, his restraints objection, Lindsey's argument fails on its own terms: the district court did not abuse its discretion in ordering Lindsey restrained. The record reflects that the district court took steps to mitigate potential prejudice to Lindsey, including using table skirts to obstruct the jury's view of Lindsey's restraints. Lindsey does not contend that the jury ever saw the restraints or was otherwise aware of their presence. Moreover, as he concedes, there is "no evidence proving . . . the jury was ever aware of the shackles." Finally, while the district court did not make a robust record, it adequately justified its decision to restrain Lindsey by citing Lindsey's serious pending charges and violent criminal history. In light of the limited risk of prejudice evident here and the seriousness of Lindsey's charges and criminal history, we conclude the district court did not abuse its discretion in ordering Lindsey restrained.

Lindsey attempts to escape this conclusion by arguing that the United States Supreme Court's decision in Deck v. Missouri, 544 U.S. 622 (2005), supplies an alternative framework for evaluating the district court's restraints order. In Deck, the Supreme Court held that "where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation," and it is instead the Government that "must prove 'beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.'" Id. at 635 (alteration in original) (citation omitted). Assuming with a healthy dose of skepticism that Deck applies when a defendant is placed in *concealed*, as opposed to *visible*, restraints, see Mendoza v. Berghuis, 544 F.3d 650, 655 (6th Cir. 2008) (noting that the "Supreme Court emphasized at least six times in Deck" that opinion's limitation "to cases where the defendant's shackles *are* 'visible to the jury' during trial" (citation omitted)), we conclude that Deck does not assist Lindsey.

The Deck rule applies only when a court acts "without adequate justification." 544 U.S. at 635; see also Williams v. Norris, 612 F.3d 941, 959 (8th Cir. 2010) ("[T]he standard announced in Deck, which places the burden of proving a lack of prejudice to the defendant on the State, only pertains where there is no adequate

-5-

justification for a defendant wearing shackles during his trial." (citation omitted)). A court acts with adequate justification when it engages in a "particularized inquiry" and reaches a "determination . . . reflect[ing] 'particular concerns' related to the 'special security needs or escape risks' of the defendant on trial." Williams, 612 F.3d at 958-59 (citations omitted). Lindsey argues that the district court failed to conduct a "particularized inquiry" here because it relied on Lindsey's criminal history and pending charges, which he contends are "generalized, categorical factors that apply to most criminal defendants." We disagree. *Lindsey*'s criminal history and charges were specific to *Lindsey*. And both were serious and reflective of dangerousness—a fact Lindsey cannot seriously dispute. We reject Lindsey's argument that the district court acted "without adequate justification" within the meaning of Deck. The Government was not required to prove beyond a reasonable doubt that the district court's restraints decision did not contribute to the verdict.[2]

Finally, Lindsey argues that the district court abused its discretion because it did not exercise its discretion at all and instead delegated the restraints decision to the marshals and deferred to courthouse policy. But this argument does not find support in the record. While the district court referred to courthouse policy and consultation with the marshals in explaining its decision to restrain Lindsey, it justified its decision to restrain Lindsey through reference to Lindsey's criminal history and current charges. That individualized restraints analysis distinguishes Lindsey's case from the cases on which he relies. See United States v. Sanchez-Gomez, 859 F.3d 649, 661 (9th Cir. 2017) (en banc), vacated and remanded, 584 U.S. 381 (2018); United States v. Haynes, 729 F.3d 178, 189 (2d Cir. 2013) (noting

---

[2]Although the Government does not argue that it could prove that the restraints decision did not affect the jury's verdict, we observe that the evidence of Lindsey's guilt—which includes a live photograph of Armstead's body recovered from a cell phone Lindsey used and license plate reader and cell phone data placing Lindsey at the airport picking Armstead up and at the murder scene near the time of Armstead's death—is overwhelming.

the total absence of suggestions or findings on the record as to "why it was necessary to shackle the defendant, who had no prior criminal history").

In sum, we conclude that the district court did not abuse its discretion in ordering Lindsey restrained during his trial, where it considered on the record Lindsey's violent criminal history and his serious pending charges.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____